[819 NE2d 634, 786 NYS2d 116]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH H. PAYNE, Appellant.

Argued September 9, 2004; decided October 19, 2004

## POINTS OF COUNSEL

*Legal Aid Society of Suffolk, Inc., Appeals Bureau,* Riverhead (*Robert B. Kenney* and *Robert C. Mitchell* of counsel), for appellant. I. It was reversible error for the trial court to have submitted the count of depraved indifference murder to the jury, where no reasonable view of the evidence can support the theory that the shooting of the victim at point-blank range with a shotgun was reckless. (*People v Wall,* 34 AD2d 215, 29 NY2d 863; *People v Gonzalez,* 302 AD2d 870, 99 NY2d 659; *People v Roe,* 74 NY2d 20; *People v Register,* 60 NY2d 270; *People v Sanchez,* 98 NY2d 373; *People v Hafeez,* 100 NY2d 253.) II. Since Penal Law § 125.25 (2), depraved indifference murder, is impermissibly vague in violation of both the New York State and the United States Constitutions, appellant's conviction for murder in the second degree should be reversed. (*People v Register,* 60 NY2d 270; *People v Roe,* 74 NY2d 20; *People v Sanchez,* 98 NY2d 373; *People v Hafeez,* 100 NY2d 253.) III. The trial court erred in denying appellant's request to charge the jury on the defense of justification. (*People v Watts,* 57 NY2d 299; *People v Wesley,* 76 NY2d 555; *People v Goetz,* 68 NY2d 96; *People v Daniels,* 248 AD2d 723; *People v Smith,* 234 AD2d 484; *People v Padgett,* 60 NY2d 142.)

*Kenneth H. Payne,* appellant pro se. I. (A) The People's evidence failed, as a matter of law, to establish a prima facie case of depraved indifference murder. (B) The People's evidence failed, as a matter of law, to establish Kenneth Payne's guilt beyond a reasonable doubt. (*People v Sanchez,* 98 NY2d 373; *People v Russell,* 91 NY2d 280; *People v Fenner,* 61 NY2d 971; *People v Register,* 60 NY2d 270; *People v Poplis,* 30 NY2d 85; *People v Reed,* 40 NY2d 204; *People v Santos,* 38 NY2d 173.) II. The trial court's refusal to charge the defense of justification to the jury deprived Kenneth Payne of his right to a fair trial. (*People v McManus,* 67 NY2d 541; *People v Padgett,* 60 NY2d 142; *People v Steele,* 26 NY2d 526; *People v Asan,* 22 NY2d 526; *People v Wag-*

man, 99 AD2d 519; *People v Miller,* 39 NY2d 543; *Matter of Y.K.,* 87 NY2d 430; *People v Goetz,* 68 NY2d 96; *Davis v Strack,* 270 F3d 111.) III. The prosecutor committed reversible error in his summation by characterizing Kenneth Payne as a liar, stating the defense was a fabrication and by vouching for his own case. (*People v Shanis,* 36 NY2d 697; *People v Whalen,* 59 NY2d 273; *People v Conyers,* 52 NY2d 454; *People v Spinelli,* 214 AD2d 135; *People v Wagman,* 99 AD2d 519; *People v Rosa,* 108 AD2d 531; *People v Jackson,* 143 AD2d 363; *People v Negron,* 161 AD2d 537; *People v Walters,* 251 AD2d 433; *People v Pelchat,* 62 NY2d 97.) IV. Statements Kenneth Payne made to the police, while in custody, were elicited in violation of his rights under US Constitution Amendments V, VI and XIV and NY Constitution, article I, § 6. (*People v Soto,* 183 AD2d 926; *People v Smith,* 150 AD2d 738; *People v Huffman,* 41 NY2d 29; *People v Shivers,* 21 NY2d 118; *People v Davis,* 224 AD2d 541; *Miranda v Arizona,* 384 US 436; *People v Quarles,* 58 NY2d 664; *People v Chapple,* 38 NY2d 112; *People v Bethea,* 67 NY2d 364; *People v Beames,* 149 AD2d 817.)

*Thomas J. Spota, District Attorney,* Riverhead (*Steven A. Hovani* and *Anne E. Oh* of counsel), for respondent. I. Defendant's conviction of depraved indifference murder is proper in all respects. The jury's unanimous guilty verdict should, therefore, remain undisturbed. (*People v Gray,* 86 NY2d 10; *People v Hines,* 97 NY2d 56; *People v Finger,* 95 NY2d 894; *People v Norman,* 85 NY2d 609; *People v Hines,* 97 NY2d 56; *Jackson v Virginia,* 443 US 307; *People v Rossey,* 89 NY2d 970; *People v Contes,* 60 NY2d 620; *People v Ford,* 66 NY2d 428; *People v Bleakley,* 69 NY2d 490.) II. The trial court's refusal to charge the defense of justification was proper. (*People v Butts,* 72 NY2d 746; *People v Watts,* 57 NY2d 299; *People v Steele,* 26 NY2d 526; *People v Reynoso,* 73 NY2d 816; *People v Collice,* 41 NY2d 906; *People v Adams,* 259 AD2d 299.) III. The prosecution's summation was fair comment on the trial evidence and defense counsel's closing argument. (*People v Utley,* 45 NY2d 908; *People v Cicchetti,* 44 NY2d 803; *People v Galloway,* 54 NY2d 396; *People v Morgan,* 66 NY2d 255; *Williams v Brooklyn El. R.R. Co.,* 126 NY 96; *People v Montez,* 203 AD2d 216; *People v Ortiz,* 2 AD3d 125; *People v Walters,* 251 AD2d 433; *People v Smart,* 96 NY2d 793; *People v Guzman,* 76 NY2d 1.) IV. Evidence of defendant's oral, written and videotaped statements, as well as the gun seized at the scene, were properly admitted at trial. (*People v Leonti,* 18 NY2d 384; *People v Winchell,* 64 NY2d 826; *People v Yukl,* 25 NY2d 585; *People v Prochilo,* 41 NY2d 759; *People v*

*Miguel,* 53 NY2d 920; *People v Friola,* 11 NY2d 157; *People v Brown,* 96 NY2d 80; *Horton v California,* 496 US 128; *People v Burr,* 70 NY2d 354; *People v Herring,* 179 AD2d 549.)

## OPINION OF THE COURT

ROSENBLATT, J.

We once again address the crime of depraved indifference murder and where it fits within the Penal Law's statutory framework. In the appeal before us, defendant, armed with a 12-gauge shotgun, went to the deceased's home and shot him at point-blank range. Having acquitted defendant of intentional murder—the first count in a two-count indictment—the court convicted defendant of depraved indifference murder after the court improperly allowed the jury to consider that charge.

The Appellate Division affirmed, and a Judge of this Court granted leave to appeal. We reverse. Defendant did not commit depraved indifference murder.

## I.

Defendant and the deceased, Curtis Cook, had been friends for nearly 20 years, but their relationship began to sour in 1998. In March of that year, Cook was arrested and accused of sexually abusing an eight-year-old girl, a playmate of defendant's daughter. Although defendant knew the girl and her father, he remained friendly with Cook.

On April 27, 1998, defendant drank large amounts of alcohol at a local bar, while Cook drank at home. When defendant's girlfriend arrived at the tavern to take him home, she told defendant that Cook telephoned her to complain about defendant's dog. This infuriated defendant, because Cook had been belligerent toward the girlfriend and defendant had warned him never to communicate with her.

Following a telephone conversation with Cook, defendant went to his closet and took out a 12-gauge shotgun. He referred to the weapon as an "elephant gun." With the loaded weapon in hand, defendant walked next door to confront Cook. After the two exchanged words, defendant shot Cook at point-blank range, killing him. The wound was below the heart and just above the navel. Defendant admitted the shooting and presented a justification defense, which by its verdict the jury rejected.[1]

---

1. Neither side asked that the jury consider lesser included charges.

## II.

This Court's recent holdings in *People v Gonzalez* (1 NY3d 464 [2004]), *People v Hafeez* (100 NY2d 253 [2003]) and *People v Sanchez* (98 NY2d 373 [2002]) have made it clear that depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York. While we have identified instances in which a killing could qualify as depraved indifference murder, a point-blank shooting is ordinarily not one of them.

Pursuant to Penal Law § 125.25 (2), a person is guilty of depraved indifference murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." In *People v Gonzalez* (1 NY3d 464 [2004]), the Court reversed a depraved indifference murder conviction for legal insufficiency. There, the defendant kicked in the door of a barber shop, pulled a gun from his waistband and, at close range, shot the victim several times. We held that because it evinced an intent to kill, a homicide of that type could not constitute depraved indifference murder. Indifference to the victim's life, we explained, contrasts with the intent to take it. Here, as in *Gonzalez*, the evidence established defendant's intent to kill.

The prosecution seeks to distinguish *Gonzalez*, asserting that here defendant's conduct was not "overtly intentional" in that he did not plan or contrive the shooting, and that the jury could have concluded that the homicide was merely instinctive—the result of a reckless act in arming himself before confronting Cook. This theory is flawed and reveals a fundamental misunderstanding of the concepts underlying depraved indifference murder.

To begin with, intentional murder does not require planning or contrivance. The premeditation element was eliminated in the 1967 Penal Law (*see People v Patterson*, 39 NY2d 288, 298 [1976]). Secondly, by the prosecution's theory, homicides could be routinely categorized and sustained as depraved indifference murder whenever the defendant brought a weapon to a contentious confrontation. Inasmuch as it is "reckless" to arm oneself under those circumstances or to wield a weapon carelessly (the argument goes) any homicide that results could qualify as depraved indifference murder. That is not the law. If it were, every homicide, particularly intentional ones, would be converted into depraved indifference murder.

Moreover, the prosecutor's position is based on the erroneous notion that the wanton disregard for human life inherent in every intentional homicide amounts to depraved indifference murder. In *Gonzalez*, this Court rejected that contention, holding that the reckless conduct must be "so wanton, so deficient in a moral sense of concern, so devoid of regard for the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another" (1 NY3d at 469, quoting *People v Russell*, 91 NY2d 280, 287-288 [1998]).

The use of a weapon can never result in depraved indifference murder when, as here, there is a manifest intent to kill. In arguing that a point-blank shooting may constitute depraved indifference murder, the prosecution relies on *People v Sanchez* (98 NY2d 373 [2002]). In *People v Hafeez* (100 NY2d 253, 259 [2003]), however, the Court rejected the argument the prosecution makes here. The Court emphasized that *Sanchez* "involved the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, presenting a heightened risk of unintended injury." (*Id.*)

This Court thus differentiated cases like the one before us (and *Gonzalez*) from homicides in which a defendant lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoots into a crowd or otherwise endangers innocent bystanders. *People v Jernatowski* (238 NY 188 [1924]) is a prominent example of this genre. There, the defendant fired shots into a house, killing the wife of a man with whom he had a confrontation. Similarly, in *People v Fenner* (61 NY2d 971 [1984]), defendant fired into a fleeing crowd. In *People v Russell* (91 NY2d 280 [1998]), defendant shot and killed an innocent bystander during a gun battle and in *People v Gomez* (65 NY2d 9 [1985]), defendant struck a child with a car, accelerated, and killed another child while speeding on crowded sidewalks. The case before us involves a crime directed at a single individual—and, moreover, an intentional killing—as opposed to the generalized depraved indifference exemplified in the above cases.

We have recognized another species of depraved indifference murder in which the acts of the defendant are directed against a particular victim but are marked by uncommon brutality—coupled not with an intent to kill, as in *Gonzalez* and the case before us, but with depraved indifference to the victim's plight.

Instances include where, without the intent to kill, the defendant inflicted continuous beating on a three-year-old child (*see People v Poplis*, 30 NY2d 85 [1972]), fractured the skull of a seven-week-old baby (*see People v Bryce*, 88 NY2d 124 [1996]), repeatedly beat a nine year old (*see People v Best*, 85 NY2d 826 [1995]) or robbed an intoxicated victim and forced him out of a car on the side of a dark, remote, snowy road partially dressed and without shoes in subfreezing temperatures (*see People v Kibbe*, 35 NY2d 407 [1974]; *see also People v Mills*, 1 NY3d 269 [2003]).

As the drafters of the Penal Law put it, depraved indifference murder is "extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness: for example, shooting into a crowd, placing a time bomb in a public place, or opening the door of the lions' cage in the zoo" (Denzer and McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 125.25, at 235 [1967]).

Thus, if a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-defense), but not depraved indifference murder. Moreover, it should be obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide. Firing more rounds or inflicting more wounds does not make the act more depravedly *indifferent*, but more intentional. Absent the type of circumstances in, for example, *Sanchez* (where others were endangered), a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder.[2]

---

2. *People v Roe* (74 NY2d 20, 22 [1989]) may be a rare exception—the only one in our decisional law. There, the defendant deliberately loaded a mix of live and dummy shells at random into the magazine of a 12-gauge shotgun. He pumped a shell into the firing chamber, not knowing whether it was a dummy or live round. The defendant pointed the gun directly at the victim and said "Let's play Polish roulette. . . . Who is first?" (*Id.*) He then pulled the trigger and discharged a live round into the victim, killing him. This type of shooting is the antithesis of intentional murder because it evinces not an intent to kill, but an indifference—a depraved indifference—to the life or death of the victim. We note that the dissent in *Roe* argued that the majority mischaracterized depraved indifference murder's core element as mere recklessness rather than depraved indifference, and that as long as depraved indifference murder and reckless manslaughter were identified as having the same core element—mere recklessness—depraved indifference murder could be improperly used as a proxy for reckless manslaughter (74 NY2d at 29-38;

■ Lastly, and contrary to the dissent, defendant has preserved his claim that he did not commit depraved indifference murder. The dissent relies on *People v Hines* (97 NY2d 56, 61 [2001]), where the trial court "promptly denied" a motion to dismiss made at the close of the People's case. *Hines* does not govern the appeal before us. There, we did not address the issue of preservation where, as here, a trial court reserved decision on a CPL 290.10 motion. When a trial court denies such a motion at the close of the People's case, a defendant who thereafter introduces proof waives the right to have the court consider the motion solely on the basis of the People's evidence (*see Hines*, 97 NY2d at 61). Where, however, the court has reserved decision, the defendant has preserved a claim of insufficiency, and the trial court would then rule on the CPL 290.10 motion as if the motion were made at the close of all the evidence. We decline to expand *Hines* and elevate preservation to a formality that would bar an appeal even though the trial court, aware that the motion was pending, had a full opportunity to review the issue in question.[3]

Defendant did not commit depraved indifference murder within the meaning of the statute. Therefore, the order of the Appellate Division should be reversed and the indictment dismissed.

R.S. SMITH, J. (concurring). I join the Court's opinion, though I appreciate the force of the dissent's argument that it is difficult to distinguish *People v Hines* (97 NY2d 56 [2001]). In joining the majority, I am influenced to some degree by my doubt that the rule of *Hines* is a wise one. I think the majority is correct in giving *Hines* a restrictive reading.

READ, J. (dissenting). Defendant plainly failed to preserve the claim that his conviction of depraved mind murder is not supported by legally sufficient evidence. At the close of the People's case, defendant moved for a trial order of dismissal of the depraved mind murder count of the indictment (*see* CPL 290.10). The trial court's "fail[ure]" to grant this motion does

---

*see also People v Sanchez*, 98 NY2d at 398, 406-411 [dissenting op]; *People v Hafeez*, 100 NY2d 253, 260 [2003] [concurring op]). In seeking reversal, defendant, citing *Jones v Keane* (329 F3d 290 [2d Cir 2003], *cert denied* 540 US 1046 [2003]), has made that argument. We need not address it, because we conclude that under *any* hypothesis defendant did not commit depraved indifference murder.

3. To the extent the dissent relies on *People v Kirkpatrick* (32 NY2d 17 [1973]), we note that the case did not involve preservation.

not present an "issue of law" within our scope of review because "defendant waived review of the mid-trial decision by testifying himself" (*People v Hines*, 97 NY2d 56, 61 [2001], citing *People v Kirkpatrick*, 32 NY2d 17, 21 [1973], *appeal dismissed* 414 US 948 [1973]). "[I]n the absence of a motion to dismiss at the close of all the evidence" (*People v Hines*, 97 NY2d at 62), defendant has not preserved a claim that, "viewing the evidence at trial in its entirety, the People failed to establish [his] guilt [of depraved mind murder] beyond a reasonable doubt" (*id.* at 61-62). Accordingly, we respectfully dissent from the Court's reversal of defendant's conviction.

Preservation is not simply a "formality" (majority op at 273). Under the State Constitution, this Court, with limited exceptions not applicable here, can consider only "questions of law" (NY Const, art VI, § 3 [a]; *see also* CPL 470.35). Generally, a question of law is an issue that was preserved by a sufficiently specific and timely objection at trial (*see* CPL 470.05 [2]; *see also People v Gray*, 86 NY2d 10, 19 [1995]). In light of our decision in *Hines*, defendant does not present us with a preserved question of law on this appeal.

The defendant in *Hines* moved for a trial order of dismissal following the close of the People's case. The trial court denied the motion, and the defendant proceeded to present evidence. Following a jury verdict of conviction, the trial court revisited the previously denied motion to dismiss in the guise of addressing a motion to set aside the verdict under CPL 330.30 (1). For reasons that should foreclose us from reviewing defendant's claim here, we held in *Hines* that "the trial court lacked jurisdiction to address the sufficiency of the People's case-in-chief" (*People v Hines*, 97 NY2d at 61).

CPL 330.30 (1) reflects the constitutional limitation on our jurisdiction to questions of law. This statute allows a trial court to set aside a verdict for "[a]ny ground appearing in the record which . . . would require a reversal or modification of the judgment *as a matter of law* by an appellate court" (CPL 330.30 [1] [emphasis added]). In other words, "[u]nder this statutory standard, an insufficiency argument may not be addressed unless it has been properly preserved for review during the trial" (*People v Hines*, 97 NY2d at 61). Significantly, we concluded in *Hines* that, "[b]ecause defendant waived review of the mid-trial decision by testifying himself and presenting the testimony of other witnesses . . . , this was not an issue of law that could properly be adjudicated in a CPL 330.30 motion" (*id.*).

Just as the trial court in *Hines* "lacked jurisdiction to address the sufficiency of the People's case-in-chief in the context of the CPL 330.30 motion" (*id.*), we have no jurisdiction here to entertain a claim that the People did not present evidence legally sufficient to establish depraved mind murder. Quite simply, once a defendant puts on a case, a trial court's "fail[ure]" (*id.*) to grant a CPL 290.10 motion made at the close of the People's case does not present a question of law (*see id.*).

The trial court in *Hines* "promptly denied defendant's CPL 290.10 motion at the close of the People's case-in-chief" (*id.*), while here, the trial court reserved decision. Our holding in *Hines*, however, relied on *People v Kirkpatrick* (32 NY2d 17 [1973], *supra*), where "we . . . held that 'a defendant who does not rest after the court *fails to grant* a motion to dismiss at the close of the People's case, proceeds with the risk that he will inadvertently supply a deficiency in the People's case' " (*People v Hines*, 97 NY2d at 61, quoting *People v Kirkpatrick*, 32 NY2d at 21 [emphasis added]). In *Kirkpatrick*, as was the case here, the trial court's "fail[ure]" (*People v Kirkpatrick*, 32 NY2d at 21) to grant a midtrial dismissal motion resulted from a reservation of decision (*see id.*). Thus, whether a trial court "decline[s] to grant" (*People v Hines*, 97 NY2d at 61) a dismissal motion by outright denial, as in *Hines*, or by reserving decision, as occurred here and in *Kirkpatrick*, the effect is the same: when a defendant presents a case, the sufficiency of the People's case and, concomitantly, the propriety of a trial court's "fail[ure]" to grant a midtrial dismissal motion, does not present a question of law.[1]

Several CPL provisions supply additional support for the conclusion that we lack jurisdiction to review defendant's claim under the circumstances here. CPL 290.10 (1) allows for a defendant to move for a trial order of dismissal either "[a]t the conclusion of the people's case or at the conclusion of all the evidence." Thus, CPL 290.10 contemplates that when a defendant presents a case, the defendant must make a motion to dismiss, or at least renew an earlier motion on which the trial court has reserved decision, "at the conclusion of all the evidence" (CPL 290.10 [1]; *see also People v Hines*, 97 NY2d at 61-62).

---

1. In *Kirkpatrick*, the trial court sat as the factfinder (*see People v Kirkpatrick*, 64 Misc 2d 1055, 1056 [Crim Ct, NY County 1970]). We have emphasized, however, that the rules of preservation apply equally to jury and nonjury trials (*see e.g. People v Santos*, 86 NY2d 869, 870-871 [1995]).

CPL 290.10 affords a trial court the discretion either to grant a dismissal motion immediately or, alternatively, to "reserve decision on the motion until after the verdict has been rendered and accepted by the court" (CPL 290.10 [1]), which is what happened here. "Where the court has reserved decision and the jury thereafter renders a verdict of guilty, the court shall proceed to determine the motion upon such evidence as it would have been authorized to consider upon the motion had the court not reserved decision" (CPL 290.10 [1]).[2]

If a defendant does not present a case, the only evidence adduced at trial is the People's proof. When a defendant presents a case, however, the equation changes, and the trial court is not "authorized to consider" only the sufficiency of the People's evidence. Rather, a motion to dismiss must be predicated on "the evidence at trial in its entirety" (People v Hines, 97 NY2d at 61). As we recognized in Hines, "[c]onsistent with the overall truth-seeking function of a jury trial, the rationale underlying this rule is that a reviewing court should not disturb a guilty verdict by reversing a judgment based on insufficient evidence without taking into account all of the evidence the jury considered in reaching that verdict, including proof adduced by the defense" (id.).[3]

The directive in CPL 290.10 for a defendant who presents proof to move to dismiss at the "conclusion of all the evidence" dovetails with the purposes served by the preservation standards of CPL 470.05 (2). Both reflect the solicitude for the "truth-seeking function of a jury trial" voiced in Hines. Indeed, requiring a sufficiently detailed and "timely objection alerts all parties to alleged deficiencies in the evidence and advances [both] the truth-seeking purpose of the trial [and] the goal of

---

**2.** Defendant stated in his brief to us that "[t]he trial court denied defense counsel's request for a trial order of dismissal"; at oral argument, the People characterized the motion as "implicitly denied." There is no indication in the record that the trial court revisited the reserved motion. After the jury returned a guilty verdict, defendant asked only for the jurors to be polled; he did not ask the trial court to rule on any reserved motion.

**3.** CPL 290.10 (1) unambiguously refutes the majority's assertion that a CPL 290.10 motion made at the close of the People's case can somehow be treated by a trial court as if the motion had been made at the close of all the evidence (see majority op at 273). If this were the case, then the Legislature would not have taken pains to differentiate between these two situations, especially since they coincide only if a defendant presents no case. When, as is the case here, a defendant presents a case, CPL 290.10 expressly contemplates the need for a separate motion at "the conclusion of all the evidence" (CPL 290.10 [1]).

swift and final determinations of the guilt or nonguilt of a defendant" (*People v Gray*, 86 NY2d at 21).

Further, if a defendant presents a case, "the time . . . when the court had an opportunity of effectively" (CPL 470.05 [2]) dealing with a supposed evidentiary insufficiency is "at the conclusion of all the evidence" (CPL 290.10 [1]). Given that a defense case could "inadvertently supply a deficiency in the People's case" (*People v Kirkpatrick*, 32 NY2d at 21), an evidentiary insufficiency that might have been present "[a]t the conclusion of the people's case" may no longer exist at "the conclusion of all the evidence" (CPL 290.10 [1]). Accordingly, a defendant who believes that the trial evidence remains insufficient must move to dismiss "at the conclusion of all the evidence" (CPL 290.10 [1]).

"[A] party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered" (CPL 470.05 [2]). Nonetheless, a motion to dismiss made at the close of the People's case cannot be deemed to encompass a claim that the entire trial record, including evidence that the defendant may offer in defense, is insufficient. As previously noted, the defendant may "inadvertently" (*People v Kirkpatrick*, 32 NY2d at 21) close the evidentiary gap in the People's case.

While *Kirkpatrick* did not "involve preservation" (majority op at 273 n 3), it nonetheless set the tone for what the trial court here could review, and, concomitantly, what defendant had to do to preserve his claim. As was the case in *Kirkpatrick*, the trial court was no longer "authorized to consider" (CPL 290.10 [1]) the sufficiency of the People's case after defendant put in proof. Defendant never moved to dismiss in light of the trial evidence in its entirety, although he had the opportunity to do so at the close of his proof or at the charge conference. Thus, the majority is wrong to say that the trial court had a "full opportunity to review the issue in question" (majority op at 273).[4]

---

4. As originally enacted, CPL 290.10 did not provide for a trial court to reserve decision on a motion to dismiss for insufficiency of the evidence. The Legislature amended the statute in 1983 to endorse this procedure as a way to preserve the People's right to appeal and reinstate a conviction after a trial or-

At the close of the People's case, defendant articulated a reason to support his motion for dismissing the intentional murder count by referring to a statement that he made in a videotape interview conducted by the assistant district attorney. Specifically, when asked by the assistant district attorney "point-blank" whether he intended to kill the victim, defendant responded that this was "a tough question, he really didn't know." With respect to the depraved mind murder count, however, defendant argued only "that one shot from a shotgun is not depraved indifferent action as . . . contemplated by the legislature and enunciated by the courts in their decisions throughout the years." He neglected to say *why* a single shot is not depraved mind murder. He never specified the element of depraved mind murder for which sufficient proof was lacking.[5] For all the trial court knew, defendant might have been arguing that the circumstances were not depraved because he fired a single, rather than multiple, gunshots (*cf. Gonzalez*, 1 NY3d at 468). Whatever the defendant may have meant, there is no reason to believe that his general objection adequately alerted the trial court to the claim that he now raises, informed by our subsequent decisions in *Sanchez* and especially *Hafeez* and

---

der of dismissal without implicating double jeopardy principles (*see* L 1983, ch 170, § 1; *see also People v Key*, 45 NY2d 111 [1978]). Thus, the direction for a reserved motion to be determined "upon such evidence as [the court] would have been authorized to consider upon the motion had the court not reserved decision" (CPL 290.10 [1]) postdated our observation in *Kirkpatrick* "that a defendant who does not rest after the court fails to grant a motion to dismiss at the close of the People's case, proceeds with the risk that he will inadvertently supply a deficiency in the People's case" (32 NY2d at 21). "The Legislature is . . . presumed to be aware of the decisional and statute law in existence at the time of an enactment" (*Arbegast v Board of Educ.*, 65 NY2d 161, 169 [1985]; *see also People v Robinson*, 95 NY2d 179, 184 [2000]).

5.  By contrast, the defendants in *People v Sanchez* (98 NY2d 373 [2002]), *People v Hafeez* (100 NY2d 253 [2003]) and *People v Gonzalez* (1 NY3d 464 [2004]) formulated objections that did, at least, identify the element of depraved mind murder that they argued was lacking, or set forth an intelligible basis for the objection (*see e.g. Sanchez*, 98 NY2d at 390 [defendant objected to the charge, arguing that "[t]here is nothing to indicate in this record that defendant at any time acted in a depraved manner, which would require him to do some thinking about it, and recklessly, which would reach that particular point where murder in the second degree reckless and depraved should be charged"]; *see also Gonzalez*, 1 NY3d at 466 ["At the conclusion of the People's proof, defendant moved for a trial order of dismissal, arguing that the evidence was legally insufficient to establish his guilt of depraved indifference, as opposed to intentional, murder"]).

*Gonzalez*;[6] namely, that one shot from a shotgun could *only* support a conviction for intentional murder.

Indeed, defendant's testimony (unmentioned by the majority) contradicts what he now argues. At trial, defendant protested that he had *not* acted intentionally. He told the jury that he grabbed his weapon for reasons of self-defense and to protect his girlfriend and young daughter. Defendant asserted that the victim had threatened him and his family, was drunk and had a gun. According to defendant, he fired his gun at the victim almost instinctively, perhaps carelessly, and certainly not intentionally.

At the charge conference, defendant's attorney asked the trial judge to instruct the jury on justification. When asked if the defense had any other requests with respect to the charge, defendant's attorney mentioned the voluntariness of defendant's statements. He also observed that he

> "would also state for the record at this time that I am not—the defendant is not asking for any down charges, we're not asking for any lesser included offenses to be charged. And I'd like [defendant], if possible, to acknowledge that on the record in your presence, your Honor, that he has specifically asked me not to ask for any lesser included defenses [*sic*], manslaughter, criminally negligent homicide—"

The defendant then jumped in, stating "That's true. Let the charges, please, stand on the top charges that I was arrested on and no other charges." Even after the trial judge refused to charge justification, defendant steadfastly rejected requesting the court to charge the jury on lesser included offenses. When the trial judge asked defendant one final time if it was his "wish [that] only the two counts charged in the indictment [be] given to the jury for their deliberations," defendant responded "Yes, sir, it is."

Nothing in defendant's testimony or this discussion at the charge conference would have motivated the trial judge to revisit the motion on the depraved mind charge of his own accord. If defendant had moved for a trial order of dismissal at the conclusion of his proof or had objected to the trial court's submission

---

**6.** These three decisions postdate the trial in this case. *Sanchez* and *Hafeez* were handed down before defendant's appeal was submitted in the Appellate Division; *Gonzalez* was handed down afterwards, but before briefing and oral argument in our Court.

(*cf. Sanchez*, 98 NY2d at 390) on the ground that he now advances—that he could only have acted intentionally, not recklessly—the trial judge would have had the opportunity to consider the motion on the entire record, and might have granted it. Whether or not the trial court granted the motion, defendant's making of it might have prompted the People to pursue a different course of action, perhaps by asking the trial judge to instruct the jury to consider manslaughter rather than acquiescing in defendant's request for the trial judge not to instruct the jury on any lesser included offenses. Given the option of manslaughter, the jury might have delivered a different verdict.

Defendant admittedly killed the victim. As the record discloses, he ultimately gambled on gaining acquittal by restricting the jury's choices to intentional and depraved mind murder, and lost. Now he seeks to reverse his conviction by resurrecting an ill-defined objection that he abandoned as the trial progressed. Because defendant did not move for a trial order of dismissal following the close of his case—or ask at that time to renew his earlier motion or object to the trial judge's submission or even ask the judge to rule on the reserved motion after the jury returned a guilty verdict—he has not preserved any claim that the evidence adduced during trial was legally insufficient to support his conviction for depraved mind murder (*see People v Hines*, 97 NY2d at 61-62). Accordingly, defendant has not presented us with a reviewable question of law (*see id.* at 62). However strongly some of our colleagues may feel that "depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York" (majority op at 270), the Court does not properly reach the merits on this appeal.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK and R.S. SMITH concur with Judge ROSENBLATT; Judge R.S. SMITH concurs in a separate concurring opinion; Judge READ dissents in another opinion in which Judge GRAFFEO concurs.

Order reversed, etc.