OPINION OF THE COURT
Gustin L. Reichbach, J.
The defendant was convicted, after a jury trial, of murder in the second degree (Penal Law § 125.25 [2]) and sentenced on May 7, 2001 to a term of 1772 years’ imprisonment. The defendant appealed his conviction and argued that the People had failed to disprove his justification defense beyond a reasonable doubt and that the hearing court had abused its discretion in reopening the suppression hearing. On May 3, 2004, the Appellate Division, Second Department, affirmed his conviction in People v Suphal (7 AD3d 547 [2d Dept 2004]), and on August 16, 2004, the Court of Appeals denied his application for leave in People v Suphal (3 NY3d 682 [2004]). Defendant now submits a pro se motion pursuant to CPL 440.10, arguing, inter alia, that the court erroneously submitted the count of depraved indifference murder to the jury.
Because the issues raised by the defendant present complex questions of law concerning the evolving jurisprudential standards of depraved indifference murder and the retroactive effect of court rulings in the area, the court secured pro bono counsel to assist in the defendant’s motion.[1] Pro bono counsel argues in a supplemental memorandum of law that appellate counsel was *713 ineffective for failing to raise this issue on direct appeal, and that the decision in People v Payne (3 NY3d 266 [2004]) effected a retroactive change in the law which requires this court to vacate the judgment of conviction.
For many years, in recognition of the confusion generated by the law of depraved indifference murder and in anticipation of a coming change, it has been this court’s practice to require the prosecution to elect only one theory of murder for submission to the jury when a defendant has been indicted for both intentional murder and depraved indifference murder. The recent lineage for interpreting the applicability of depraved indifference murder begins with the decision in People v Register (60 NY2d 270 [1983]) where the Court held that the mens rea element in this crime was recklessness and that the crime should be defined objectively by the circumstances that existed during the commission of the crime. Three Judges dissented, arguing that the mens rea of this crime is a culpable mental state and not mere reckless conduct. When the Court revisited depraved indifference murder in People v Sanchez (98 NY2d 373 [2002]) and affirmed its holding in Register (supra), with two Judges dissenting, this area of law became more muddied. In his dissent, Judge Rosenblatt argued that to uphold a point-blank, one-on-one shooting as a depraved indifference murder was to create such a level of interchangeability between the two types of murder that would leave “no conceivable circumstances under which a charge of intentional murder will not be amenable to a conviction for depraved indifference murder.” (Sanchez at 394.)
The Court started to approach this issue differently in People v Hafeez (100 NY2d 253 [2003]) as it began to view depraved indifference as a culpable mens rea and then reiterated that analysis through People v Gonzalez (1 NY3d 464 [2004]) to People v Payne (3 NY3d 266 [2004]). In Payne, the Court determined that the defendant, who shot the victim point-blank in the chest with a shotgun after the victim was accused of sexually molesting a child who was a friend of the defendant’s daughter, could not be convicted of depraved indifference murder when his actions clearly established an intent to take the victim’s life. (Id. at 270.) The evolution continued in People v Suarez (6 NY3d 202 [2005]) where three Judges suggested in their concurrence that Register (supra) should be overruled. The Court finally did so in People v Feingold (7 NY3d 288 [2006]). Throughout the *714 course of this latter analysis, the Court concluded that depraved indifference murder will rarely apply to a one-on-one killing. The Court made it clear that depraved indifference is now defined by the mental state of the perpetrator and not by the factual circumstances surrounding the crime.
This line of decisions raised the issue of whether the sea change in the law of depraved indifference murder initiated by People v Payne (supra) and continuing through People v Feingold (supra) should be applied retroactively. Defendant argues that it must be so applied, and the People argue that it should not be applied retroactively. The court heard argument on the motion prior to the decision issued by the Court of Appeals in Policano v Herbert (7 NY3d 588 [2006]); however, the parties agreed to wait for this court’s decision as Policano v Herbert promised to deal with this issue directly.
In Policano v Herbert (supra at 603-604), the Court held unequivocally that the new case law would not be applied retroactively, reasoning that the purpose of the new interpretation
“is to dispel the confusion between intentional and depraved indifference murder, and thus cut off the continuing improper expansion of depraved indifference murder . . . Further, [defendants who commit ] vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final. . .
“In addition, retroactive application would potentially flood the criminal justice system with CPL 440.10 motions to vacate convictions of culpable intentional murderers who were properly charged and convicted of depraved indifference murder under the law as it existed at the time of their convictions” (internal quotation marks omitted).
After the Policano decision was issued, this court received supplemental submissions from the parties. The defendant argues that the law to be applied to this case is to be determined by the law in effect at the time the defendant’s conviction becomes final, which is defined as 90 days after final action by the Court of Appeals, when the defendant’s time for filing a petition for a writ of certiorari in the United States Supreme Court expires. In the defendant’s case, he had until November 15, 2004 to file such a writ, and therefore his conviction was not *715 final until that date, notwithstanding that no such writ was filed. The decision in People v Payne (supra) was issued on October 19, 2004, almost one month prior to the expiration of this 90-day period. Defendant argues that the change in the law of depraved indifference occasioned by the decision in Payne must therefore be applied to the defendant’s case.
To further complicate matters, the court is faced with a procedural bar to considering defendant’s motion regarding depraved indifference murder since the issue was not raised on his direct appeal. The defendant argues that due to the fluctuating state of the law on this issue, it was ineffective assistance for his appellate counsel to fail to raise it on appeal and cites Preiser, Practice Commentaries to CPL 440.10 (2) (c) (McKinney’s Cons Laws of NY, Book 11 A, CPL 440.10) in support of his argument. The People answer that a motion of this type can only be raised in an application for a writ of error coram nobis to the Appellate Division, citing People v Bachert (69 NY2d 593 [1987]) and People v Pachay (185 AD2d 287 [2d Dept 1992]). They further argue that appellate counsel’s failure to raise the issue at the time of this defendant’s appeal was not ineffective in light of the state of the law at that time: that is prior to the decisions being issued in Hafeez, Gonzalez, and Payne (supra).
This court agrees with the People’s interpretation that Bachert (supra) and Pachay (supra) control. In Bachert, the court stated “a common-law coram nobis proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel until such time as the Legislature enacts a particular and comprehensive remedy.” (69 NY2d at 595-596.) Therefore, this court cannot decide this issue in a motion pursuant to CPL 440.10, and it must be heard by the Appellate Division, Second Department, as a writ of error coram nobis.
However, even if the court were to reach the merits of the issue, that is, whether defendant’s conviction for depraved indifference homicide is barred by Payne, the court finds that based on the evidence presented at trial, this is the rare case where a one-on-one murder could be found to qualify as a depraved indifference murder.
The People’s case was that the defendant and the decedent knew each other. Approximately a month and a half prior to this incident, the two had been sitting in the defendant’s car when they were approached by the police. The decedent purportedly dropped some crack in the car and both men were arrested *716 for possession of the drugs. On the day of this incident, the two were arguing about that prior incident as well as some money the decedent allegedly owed the defendant. The argument escalated and, soon thereafter, witnesses saw the victim running down the street with the defendant following four to five feet behind him firing a gun several times. The defendant then left the scene in his car and the victim was transported to the hospital by ambulance, where he later died from the six gunshot wounds he had sustained. The fatal shots had been fired at his back, which then perforated his lung, spinal cord, pancreas, liver and aorta. The police recovered 17 9 millimeter discharged shells from the scene of the incident.
After the People’s case, the defense moved for a trial order of dismissal of the depraved indifference count. (T at 261.)[2] The court stated for the record, “Well, as I previously indicated at the bench, I am somewhat troubled by that count in the indictment based on this evidence.” (T at 261.) The court indicated it was inclined, based on the People’s case, to dismiss the count but reserved decision on the motion at that time. The defense then proceeded with its case.
The defendant testified that on the day of the incident, the decedent approached him to argue about how the defendant had been treating him since they had been arrested for the crack possession. As the argument escalated, the defendant testified that the decedent pulled a gun from his waistband. Defendant stated that he was able to wrest the gun away from the decedent, but that decedent’s response was only to smile and place his hand in the left pocket of his light blue jacket. The defendant testified that he believed that the decedent had another gun in that pocket and so he aimed the gun he had recovered at the decedent’s left shoulder and pulled the trigger. Defendant testified that he didn’t intend to hurt the decedent but was trying to protect himself from the possibility of being shot with a second gun. He did not think he had hit the decedent with the first shot, since he saw no blood, so he tried to chase him away by firing at him several more times, in an attempt to scare him. He never saw any blood and kept firing until he saw the decedent trip and fall. At that point, the defendant dropped the gun, jumped into his car, and drove away, all the while believing that he had not hurt the decedent.
*717 After the defense rested, the court rendered its decision on the issue of charging depraved indifference murder, which it had previously reserved. The court stated, “based on the testimony now on the record, the defendant’s application to dismiss count two is denied, because there is sufficient basis now to charge that.” (T at 337 [emphasis added].) The court had concluded at that time, and still believes that there was a reasonable view of the evidence, based upon the defendant’s own testimony, upon which the jury could find that the defendant did not intend to hit or kill the decedent, but was merely trying to scare him off, albeit in an extremely reckless and depraved manner. (Cf., People v McMillon, 31 AD3d 136 [2d Dept 2006] [defendant claimed that he did not mean to kill or even injure the deceased and the Court found that the evidence did not establish defendant’s intent to kill].) While in this case, the prosecution argued that firing so many shots at the decedent manifested an intent to kill, the jury could also reasonably find that, according to defendant’s own testimony, the defendant did not intend harm, that he was merely trying to scare the deceased away and that he simply didn’t care whether grievous harm resulted or not, signifying a depraved indifference to the risk of killing the decedent. Since the evidence in this particular and unusual case supported both interpretations, it was appropriate to submit the alternative theories to the jury. Therefore, the defendant’s motion is denied in its entirety.

. The court enlisted Melvin Wulf, Esq., for many years the general counsel of the NYCLU and a distinguished member of the New York bar, to represent defendant on the instant motion. Despite the court’s offer to seek his appointment pursuant to article 18-b of the County Law, Mr. Wulf declined, agreeing, because of the public importance of the issues presented, to represent the defendant pro bono publico. Mr. Wulf s generosity as well as his scholarly and *713 zealous representation of the defendant in this matter is in the best tradition and an admirable example for the entire bar.

. The letter T followed by a number refers to the page of the trial transcript.