■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNY JEAN-BAPTISTE, Appellant. [833 NYS2d 31]—

Judgment, Supreme Court, New York County (John A.K. Bradley, J., at suppression hearing; Joan Sudolnik, J., at trial and sentence), rendered May 4, 2001, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 18 years to life, affirmed.

Defendant raises a number of issues, including, among other things, the sufficiency of the evidence supporting his conviction of depraved indifference murder, the admissibility of his written and videotaped statements, and the propriety of the court's adverse inference charge against him for not calling a witness. For the following reasons, we affirm defendant's conviction and reject his claims of error.

The record in this case reveals that defendant was interviewed by New York Police Department Detective Kevin Ahearn and two other detectives at his home in Brooklyn after his car was found at the scene of a shooting, and that he agreed to accompany the detectives to the precinct. When they arrived, Ahearn left defendant with the other detectives and had no further connection with the investigation. Defendant told the detectives that he and several friends were outside a Manhattan nightclub when they became involved in a verbal altercation with a group of men, which quickly escalated into a street brawl. Defendant tried to break up the fight and told the bouncers from the club that he was a law enforcement agent. He initially claimed that he found the gun on the street and that it accidentally discharged when he was punched in the face. Subsequently, he admitted that the gun used in the shooting was his, that he was not authorized to carry it, and that he shot the man who punched him, but claimed the shooting was in self-defense. He stated that he gave the gun to a friend in Brooklyn after the incident. The detectives took defendant to retrieve it.

While the detectives and defendant were out retrieving the gun, an attorney named Berger called the precinct and spoke to detective Ahearn. Berger stated that he was from defendant's union and asked if defendant was at the precinct. Ahearn told Berger that defendant was out with other detectives. Berger asked if defendant was under arrest. Ahearn replied that he was not, and that defendant came to the precinct voluntarily, was given his *Miranda* warnings and had already made statements. Berger did not claim to represent defendant, and did not request that questioning cease. He gave Ahearn his telephone number and stated that defendant could call him if he needed him.

When defendant returned to the precinct with the other detectives, he began to write out a statement. He was advised at that point that Berger called and he was given Berger's telephone number. Defendant acknowledged Berger was the union attorney but did not ask to contact him or indicate that Berger was his lawyer. He took the slip of paper that Berger's number was written on and put it in his pocket. Defendant then completed his written statement where he again stated that he fired a shot because he felt his life was in danger.

In a subsequent videotaped statement to an Assistant District Attorney, defendant again claimed that he shot in self-defense but that he did not intend for the bullet to hit anyone. He stated that he did not believe he shot anyone because the gun was

pointed downward. Defendant acknowledged that he did not see a weapon in the hands of the person who punched him.

The victim, who was apparently also involved in the fight, was shot in the buttocks with a hollow point bullet and died a week later from his injuries.

The jury acquitted defendant of intentional murder but convicted him of depraved indifference murder.

Although defendant did not object to the trial court's instruction to the jury on the elements of depraved indifference murder, the People acknowledge that his challenge to the sufficiency of the evidence is only "partially unpreserved." Defendant argued in his motion to dismiss at the close of the People's case, as he does here, that the evidence did not demonstrate that he acted with the requisite "callous disregard" or "wanton indifference to human life" necessary to sustain a depraved indifference murder. Where a motion to dismiss for insufficient evidence is made, in order to preserve that issue for appeal, the argument must be "specifically directed" at the alleged error (*People v Gray*, 86 NY2d 10, 19 [1995]). Such specificity must be more than "a general motion to dismiss" (*id.*) but is "sufficient if the party made his position with respect to the ruling or instruction known to the court" (CPL 470.05).

Defendant did, in his motion to dismiss at the close of the People's case, set forth the basis of his argument that the evidence was insufficient to prove depraved indifference murder. Reference was made to the absence of prosecution witnesses who actually saw the shooting and the fact that only defendant's statements place the weapon in his hands and identify him as the shooter. While defendant was not overly expansive on each of these topics, taken as a whole, the motion was sufficiently specific to preserve this issue for our consideration (*cf. People v Cona*, 49 NY2d 26, 33 n 2 [1979]).

Limiting review to whether there was legally sufficient evidence to support defendant's conviction for murder under a theory of depraved indifference based on the court's charge as given without exception (*People v Sala*, 95 NY2d 254, 260 [2000]), we find that the evidence was sufficient to establish depraved indifference murder. "Reckless homicide cannot be elevated into depraved indifference murder merely because the actions of the defendant created a risk of death, however grave or substantial that risk may have been" (*People v Suarez*, 6 NY3d 202, 213 [2005]). To establish depraved indifference murder the People must prove "circumstances evincing a depraved indifference to human life, recklessness and a grave risk of death to another person" (*id.* at 216 [internal quotation marks omitted]). "To

rise to the level of depraved indifference, the reckless conduct must be so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another" (*People v Gonzalez*, 1 NY3d 464, 468-469 [2004] [internal quotation marks omitted]).

Viewing the evidence in the light most favorable to the People, we find that defendant acted with "depraved indifference." While the only evidence of the actual shooting were defendant's statements that had several variants ranging from self-defense to lack of intent to hurt anyone, it is clear that a reasonable view of evidence supports the jury's determination. Whether considered from the perspective of defendant firing a gun into a crowd, that included the victim without the conscious objective of killing or seriously injuring anyone, or from the perspective of shooting the victim to cause only serious physical injury while at the same time creating a grave risk of death, defendant's actions rise to the level of being so wanton and so deficient in moral sense of concern or regard for the life or lives of others as to be sufficient to support a depraved indifference murder conviction. Further, defendant's conduct in bringing a gun to a street brawl demonstrates a degree of wanton disregard and callousness toward the persons involved in the brawl (*see People v Dingle*, 30 AD3d 1121 [2006], *lv denied* 7 NY3d 925 [2006]). This is exacerbated by the fact that defendant knowingly used hollow point ammunition in the gun, which causes maximum damage to the body upon impact. Accordingly, defendant's conviction should be affirmed.

The court properly denied suppression of defendant's written and videotaped statements. There was no evidence to support the conclusion that an attorney had entered the case on defendant's behalf (*see People v West*, 81 NY2d 370 [1993]; *People v Cameron*, 6 AD3d 273 [2004], *lv denied* 3 NY3d 672 [2004]). The attorney in question did not identify himself as defendant's lawyer, but as an attorney for defendant's union, and he merely inquired about defendant's status. He did not claim that he had been retained to assist defendant in this particular matter. When informed that defendant had already waived his rights and made statements, the attorney did not ask that questioning cease. In any event, any error in admitting defendant's written and videotaped statements was harmless. Prior to making the written and videotaped statements, defendant had already made oral statements to the police in which he admitted that the gun belonged to him and that he fired the fatal shot (*see People v*

*Henriquez*, 214 AD2d 485, 486 [1995], *lv denied* 86 NY2d 873 [1995]).

The court properly granted the People's request for an adverse inference instruction based upon defendant's failure to call his friend as a witness. The People sufficiently established that it was reasonable to expect that the friend would testify favorably for defendant (*see People v Savinon*, 100 NY2d 192, 200-201 [2003]). Since none of the trial witnesses actually saw who fired the shot, and given the uncalled witness's close proximity to the crime, the witness would have been able to provide material noncumulative testimony bearing on the contested issue of defendant's mental state.

Defendant's remaining claims are unpreserved and we decline to review them in the interest of justice. Were we to review those claims, we would find them to be without merit. Concur—Mazzarelli, J.P., Sweeny and Malone, JJ.

Catterson and McGuire, JJ., concur in a separate memorandum by McGuire, J., as follows: I agree with the majority that the judgment convicting defendant of depraved indifference murder (Penal Law § 125.25 [2]) should be affirmed. Although I conclude that the evidence was legally sufficient for reasons that differ somewhat from those articulated by the majority, I write separately because I do not agree with, nor do I comprehend, the majority's statement that defendant's motion to dismiss the depraved indifference murder charge "was sufficiently specific to preserve this issue for our consideration."

As the People correctly argue, defendant voiced no objection at trial to the court's instructions to the jury on the elements of the crime of depraved indifference murder. For this reason, defendant's challenge to the sufficiency of the evidence must be evaluated according to the court's charge as given (*see People v Sala*, 95 NY2d 254, 260 [2000] [appellate review "limited to whether there was legally sufficient evidence . . . based on the court's charge as given without exception"]; *People v Dekle*, 56 NY2d 835, 837 [1982] [limiting appellate review to whether "there is evidence from which a rational trier of fact could find the essential elements of the crime as those elements were charged to the jury without exception beyond a reasonable doubt"]). So evaluated, the sufficiency of the evidence easily passes muster.

In its unremarkable (under the then-applicable law) instructions, the court essentially charged the jury that the People had to prove that (1) defendant was aware of and consciously disregarded a substantial, unjustifiable and grave risk of death; (2) the risk was of such a nature and degree that its disregard

constituted a gross deviation from the standard of care that a reasonable person would observe; (3) defendant's conduct was "so wanton, so deficient in moral sense of concern, so devoid [of] regard for the life or lives of others as to equal [in] blameworthiness, intentional conduct"; and (4) that the "circumstances surrounding this reckless conduct, when objectively viewed, made it so uncaring, [so] callous, so dangerous and so inhuman, as to demonstrate an attitude of total disregard of the person or persons endangered."

The jury reasonably could have concluded from the evidence that defendant had fired the gun into a crowd composed of the victim, Reginald Dauphin, and his friends without having the conscious objective of killing or even seriously injuring anyone. Alternatively, the jury reasonably could have concluded that defendant had intended to shoot Mr. Dauphin where he in fact was shot, the buttocks, and that the location of the wound was powerful evidence that defendant intended not to kill but to cause serious physical injury. Under the instructions given to the jury, the jury reasonably could have concluded, after finding that defendant intended to cause serious physical injury, that defendant acted with the recklessness required for depraved indifference murder (*see People v Trappier*, 87 NY2d 55, 59 [1995] ["Defendant, for example, could have fired at Hutchinson with the intent to cause him only serious and protracted disfigurement and simultaneously consciously disregarded a substantial and unjustifiable risk that . . . he would create a grave risk of . . . Hutchinson's death"]; *Fama v Commissioner of Correctional Servs.*, 235 F3d 804, 812 [2d Cir 2000] [the "jury could have concluded that Fama intended to cause bodily harm to Hawkins with a reckless disregard of the ultimate result of that harm"]; *but see People v Suarez*, 6 NY3d 202, 211-213 [2005] [indicating that a person who endangers only a single person and acts with intent to cause serious physical injury cannot be convicted of depraved indifference murder in the absence of evidence of torture or other brutality bespeaking a sufficient level of cruelty]).

Under either scenario (shooting into a crowd without any intent to kill or shooting Mr. Dauphin with intent to cause serious physical injury), the jury was entitled to conclude that defendant had recklessly caused Mr. Dauphin's death. Under either scenario, moreover, the jury also was entitled, at least insofar as these instructions are concerned, to conclude that the shooting had been committed "[u]nder circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]). The evidence, of course, must be viewed in the light most favor-

able to the People, and the evidence must be sustained as legally sufficient whenever there is "any valid line of reasoning and permissible inferences [that] could lead a rational person to convict" (*People v Santi*, 3 NY3d 234, 246 [2004] [internal quotation marks and citation omitted]). As the elements were charged to the jury, a rational juror could have concluded that the "circumstances surrounding [defendant's] reckless conduct, when objectively viewed, made it so uncaring, [so] callous, so dangerous and so inhuman, as to demonstrate an attitude of total disregard of the person or persons endangered." The jury, in short, was perfectly free to accept the prosecutor's argument on summation that "if depraved indifference is shooting into a crowd, how depraved was [defendant] shooting into the body of an unarmed man . . . ."

The jury, moreover, was entitled to conclude that defendant's use of hollow point bullets was highly relevant to the issues of defendant's recklessness and whether the shooting occurred "under circumstances evincing a depraved indifference to human life." Specifically, the jury heard the testimony of the supervising pretrial services officer in the office by which defendant was employed. The officer, who also was a firearms instructor, explained to the jury that a hollow point bullet, like the one that killed Mr. Dauphin and the others recovered from defendant's gun, causes "maximum damage" to organs as it "mushrooms" out, "spin[ning], ripping and tearing everything in its path." The jury heard as well the officer's testimony that instruction concerning these characteristics of hollow point bullets was part of the training curriculum that defendant received. In this regard, finally, the jury also learned that the bullet severely damaged Mr. Dauphin's bladder, rectum and two major blood vessels in his pelvis, transecting one of them, the iliac artery, and causing substantial loss of blood.[1]

Nor did defendant preserve for review his current challenge to the sufficiency of the evidence. Although defendant moved to dismiss the depraved indifference murder count at the close of all the evidence, the motion was predicated solely on the contention that his conduct did not "rise to the level of depraved indifference" because the evidence assertedly did not establish that

---

1. Although defendant does not contend that the verdict was against the weight of the evidence, any such contention would be to no avail as it would not relieve defendant of the consequences of his failure to object to the court's charge on the elements of depraved indifference murder (*see People v Noble*, 86 NY2d 814, 815 [1995] ["Contrary to defendant's contention, we hold that the Appellate Division is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant"]; *People v Cooper*, 88 NY2d 1056, 1058-1059 [1996] [same]).

he had acted with "call[o]us disregard" or "wanton indifference to human life." Apart from cryptically referring to the absence of "prosecution witnesses who make out the element of the depravity, the depraved indifference, the state of mind," defendant did not elaborate on this kitchen-sink objection. Although defendant conceded there were "certainly intimations of a level of recklessness, a level of disregard," he contended simply that "they do not on their face rise to the level of depraved indifference."[2] To preserve a challenge to the sufficiency of the trial evidence, the defendant's motion to dismiss must contain argument " 'specifically directed' at the alleged error" (*People v Hines*, 97 NY2d 56, 62 [2001], quoting *People v Gray*, 86 NY2d 10, 19 [1995]). Appraised in light of this standard, defendant's motion to dismiss, which made no assertions about either any specific deficiencies in the evidence or any specific requirements of the statute defining the crime of depraved indifference murder, did not preserve any challenge to the sufficiency of the evidence.

That defendant's motion to dismiss did not preserve for review any challenge to the sufficiency of the evidence is clear as well from the Court's decision in *People v Payne* (3 NY3d 266 [2004]). In *Payne*, a divided Court of Appeals held that Payne's motion to dismiss the count of depraved indifference at the close of the People's case had preserved for review his appellate challenge to the sufficiency of the evidence. As Judge Read stressed in her dissenting opinion, Payne had contended at trial "only 'that one shot from a shotgun is not depraved indifferent action as . . . contemplated by the legislature and enunciated by the courts in their decisions throughout the years' " (*id.* at 278). Although the dissenters urged that this objection was insufficient to alert the trial court to the claim Payne pressed on appeal—that one shot from a shotgun could only support a conviction for intentional murder—(*id.* at 278-279), the majority implicitly ruled otherwise (*id.* at 273). Here, in utter contrast, defendant did not link the asserted insufficiency of the evidence to support the depraved indifference count to any specific aspect of the evidence.

As noted, absent evidence of torture or particularly cruel conduct, last year the Court of Appeals appears to have foreclosed any prosecution for depraved indifference murder when a defendant who endangers only one person acts with intent to cause serious physical injury (*Suarez*, 6 NY3d at 211-

---

2. Defendant's only other contention was the even more cryptic one that there were "no witnesses from the prosecution end, who claim to be there and who make out the mechanism, the recklessness as it were."

213). Defendant, however, certainly never objected on this ground at trial. Nor did any aspect of the trial court's instructions anticipate *Suarez* or otherwise negate the line of reasoning outlined in *Trappier (supra)* and *Fama v Commissioner (supra)*. Apart from defendant's failure to preserve any such claim, *Suarez* does not command a reversal or modification for another reason. Here, there is a reasonable view of the evidence that defendant did endanger more than one person. Indeed, as was also noted earlier, in support of the depraved indifference count the prosecutor argued on summation—without objection—that the jury could find that defendant recklessly fired the gun into a crowd.

Finally, defendant's reliance on *Payne* is misplaced. Because defendant made no specific objection concerning the asserted insufficiency of the evidence to support the depraved indifference murder charge, he failed to preserve any challenge to the sufficiency of the evidence, let alone ones based on *Payne (see Gray*, 86 NY2d at 19). The crux of the decision in *Payne*, moreover, was that using a weapon cannot result in a depraved indifference murder conviction "when, as here, there is a manifest intent to kill" (*Payne*, 3 NY3d at 271). However "manifest" Payne's conscious objective may have been, drawing inferences about an actor's state of mind from the more or less objective evidence in a case is generally if not always done with rather less confidence (*see generally People v Butler*, 57 NY2d 664 [1982], *revg on dissenting op of Sandler, J.*, 86 AD2d 811, 812-815 [1982]; *People v Flack*, 125 NY 324, 334 [1891]). Here, the evidence relating to defendant's conscious objective in pulling the trigger, assuming he had one, is hardly unequivocal.

The majority correctly notes that in moving to dismiss the charge of depraved indifference murder at the close of the People's case, defendant made "[r]eference . . . to the absence of prosecution witnesses who actually saw the shooting and the fact that only defendant's statements place the weapon in his hands and identify him as the shooter." The majority errs, however, in immediately going on to state that even though "defendant was not overly expansive on each of these topics, taken as a whole, the motion was sufficiently specific to preserve this issue for our consideration (*cf. People v Cona*, 49 NY2d 26, 33 n 2 [1979])." In the first place, far from supporting the notion that a general objection can be sufficient, *People v Cona* stresses just the opposite (*id.* at 33, and at 33 n 2). Moreover, what the majority means by the phrase "this issue" is not at all clear. Although the majority believes the motion to dismiss was "sufficiently specific" to preserve for review some issue relating

to the sufficiency of the evidence, the majority never identifies the ostensibly preserved issue. The majority may mean that defendant has preserved for review challenges to the sufficiency of the evidence based on defendant's references "to the absence of prosecution witnesses who actually saw the shooting and the fact that only defendant's statements place the weapon in his hands and identify him as the shooter." If so, I do not disagree, but note the irrelevancy of that point, as defendant does not press any such baseless claim on this appeal. For the reasons discussed, the specific claims he does press, which are based on *People v Payne* (*supra*) and *People v Hafeez* (100 NY2d 253 [2003]), are all unpreserved. In any event, whatever the majority means, it correctly recognizes that the sufficiency of the evidence must be assessed on the basis of "the court's charge as given without exception" (*Sala*, 95 NY2d at 260).[3]

As I agree with the majority in all other respects, I would affirm.

---

**3.** The majority may have been misled by the inscrutable statement in the People's brief that "defendant's current challenges to the legal sufficiency of the evidence are *partially unpreserved*" (emphasis added). The People do not explain this implicit concession that at least one of defendant's appellate challenges to the sufficiency of the evidence is preserved. It appears, moreover, that no such concession was intended. After all, the People go on to argue that "defendant has not preserved for appellate review his specific arguments that it would not constitute depraved indifference if he shot Dauphin either 'intentionally' or 'accidentally.'" Of course, even if the People intended to concede that some specific appellate challenge to the sufficiency of the evidence were preserved, that concession would not be binding on the Court.