[860 NYS2d 64]

The People of the State of New York, Respondent, v Dion McIntosh, Appellant.

First Department, June 12, 2008

### APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society,* New York City (*Ellen Dille* of counsel), for appellant.

*Dion McIntosh,* appellant pro se.

*Robert T. Johnson, District Attorney,* Bronx (*Christopher J. Blira-Koessler* and *Joseph N. Ferdenzi* of counsel), for respondent.

### OPINION OF THE COURT

BUCKLEY, J.

On May 19, 2001, at around 8:30 P.M., in Connecticut, defendant lured the 16-year-old victim into his automobile, and over the course of the next three hours drove to various locations in that state, raped her at gunpoint three times and forced her to orally copulate him. They remained in a parking lot until 6:00 A.M. the next day, then drove to a gas station and a store in Westchester, and eventually went to defendant's mother's house in the Bronx. The victim begged to be set free, promising that she would not tell the police what had happened because she herself was a parole absconder, but defendant refused. That night, defendant directed the victim to get back into his SUV; inside, he struck her in the head with his gun, causing her to lose consciousness. When she awoke, defendant was strangling her with a cord around her neck, and she passed out again. At approximately 10:40 P.M., a police sergeant saw a vehicle in a parking lot in the Bronx with its lights flashing and horn beeping. As the sergeant approached, defendant, who was standing next to the car, fired a shot at him and ran. During the ensuing chase, defendant fired four or five more times, but was soon apprehended in a creek. Police officers returned to defendant's vehicle, where they found the victim, unconscious and with a sweatshirt string tied around her neck.

Defendant testified that he had had consensual intercourse with the victim, and that she had asked him to choke her with a string in order to enhance her sexual experience, but he had inadvertently caused her to lose consciousness and panicked. He claimed that the first gunshot was accidental and that he had fired the subsequent shots into the air merely to deter the police from chasing him.

■ New York had jurisdiction to prosecute defendant for first-degree kidnapping for the purpose of sexual assault (Penal Law § 135.25 [2] [a]), notwithstanding that the sexual assaults occurred in Connecticut, because an element of the offense oc-

curred in New York, where defendant continued to restrain the victim (see CPL 20.20 [1] [a]; *People v Yong Lin*, 278 AD2d 114 [2000], *lv denied* 96 NY2d 808 [2001]; *People v Moon*, 219 AD2d 817, 818 [1995], *lv denied* 87 NY2d 905 [1995]). The statute conferring jurisdiction contains no requirement that more than one element of a crime occur in New York, or that any elements occur simultaneously. In any event, the evidence supports the inference that defendant restrained the victim in New York with an intent to sexually abuse her.

■ Defendant's challenge to the sufficiency of the evidence as to the first-degree attempted murder conviction pursuant to Penal Law §§ 110.00 and 125.27 (1) (a) (v), witness elimination murder, is unpreserved for review (see *People v Gray*, 86 NY2d 10, 19 [1995]; *People v Santos*, 49 AD3d 470 [2008]; CPL 470.05 [2]), and we decline to review it in the interest of justice. As an alternative holding, we find there was sufficient evidence based on the jury charge as given without exception (see *People v Sala*, 95 NY2d 254, 260 [2000]; *People v Jean-Baptiste*, 38 AD3d 418, 420 [2007], *lv denied* 9 NY3d 877 [2007]).

A person is guilty of attempted witness elimination murder when "the intended victim was a witness to a crime committed on a prior occasion and the [attempted] death was caused for the purpose of preventing the intended victim's testimony in any criminal action or proceeding whether or not such action or proceeding had been commenced" (Penal Law § 125.27 [1] [a] [v]). Under the statute, the same person can be the victim of the prior crime and the witness intended to be eliminated; thus, a defendant can be convicted for committing a crime against a person and subsequently attempting to eliminate that same person as a witness to the original crime (see *People v Cahill*, 2 NY3d 14 [2003]). Moreover, the motivation of preventing a person's testimony need not be the sole purpose of the attempted killing, but only a substantial factor (see *id.* at 56-57).

The statute does not define "prior occasion" or specify any degree of temporal or spatial separation, although the phrase differs from other sections of the first-degree murder statute, such as Penal Law § 125.27 (1) (a) (vii) ("the victim was killed *while* the defendant was *in the course* of committing or attempting to commit and in furtherance of [certain specified felonies] or in the course of and furtherance of immediate flight after committing or attempting to commit any such crime" [emphasis added]) and Penal Law § 125.27 (1) (a) (viii) ("*as part of the same criminal transaction*, the defendant, with intent to cause

serious physical injury to or the death of an additional person or persons, causes the death of an additional person or persons" [emphasis added]).[1]

Supreme Court gave the jury a charge on "prior occasion" that approximated the definition of "criminal transaction" set forth in CPL 40.10 (2) (a).[2] Specifically, the court instructed:

> "a person who is murdered is not a witness to a crime committed on an occasion prior to the murder if the crime to which the person was a witness and the murder of that person are so closely related and connected in point of time or circumstance [of] commission as to be part of the same criminal incident."

The People presented the attempted first-degree murder charge under the theory that defendant tried to kill the victim in New York in order to prevent her from testifying as a witness to the sexual assaults committed in Connecticut the previous day. Relying on *People v Adamson* (47 AD3d 318, 323 [2007], *lv denied* 10 NY3d 807 [2008]), defendant argues that the kidnapping, rapes, and attempted murder were all part of one uninterrupted criminal incident.

Notwithstanding the Third Department's expansive language in *Adamson* that "the victim of crimes during an uninterrupted period of captivity is not the type of 'witness' intended to be protected under [Penal Law § 125.27 (1) (a) (v)]" (47 AD3d at 323), that case is distinguishable because there the defendant and his cohorts continuously brutalized the victim throughout the entire 24-hour captivity, all of which took place at one location; moreover, it is unclear whether the victim's death resulted from the cumulative effect of relentless beatings and a lack of medical care or from a coup de grace. In the instant case, by contrast, defendant abducted the victim in Connecticut for the purpose of sexually abusing her and committed the last sexual assault about three hours later; he subsequently drove to Westchester and then the Bronx, where he tried to kill her at least 20 hours after the last sexual attack. Thus, the sexual attacks and the attempted murder were separated by a prolonged break

---

1. The Court of Appeals has held that the phrase "criminal transaction" in Penal Law § 125.27 (1) (a) (viii) is a "statutory term of art . . . [that] should be construed as incorporating the technical definition given the phrase in CPL 40.10 (2)" (*People v Duggins*, 3 NY3d 522, 524 [2004]).

2. CPL 40.10 (2) defines "criminal transaction" as "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts . . . (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident."

in time, a change of localities, and the formation of distinct criminal intentions.

The case at bar is more similar to *People v Hopkins* (95 AD2d 870 [1983]), in which the defendant abducted the victim in Fulton County, at around 2:30 P.M., took her to a house where he raped and sodomized her, and the next morning brought her to a wooded area in Montgomery County, where he hit her over the head and stabbed her in the back. The Third Department held that the attempted murder was a separate criminal transaction from the rape and kidnapping (*see id.* at 871).

In the case at hand, a rational jury could have found that the sexual assaults in Connecticut and the attempted murder in New York were not "so closely related and connected in point of time or circumstance [of] commission as to be part of the same criminal incident," and therefore that defendant committed the sexual attacks on an occasion prior to the attempted murder. The verdict on the attempted first-degree murder conviction was based on legally sufficient evidence and was not against the weight of the evidence.

Defendant's sufficiency arguments concerning the attempted first-degree murder elements that he tried to kill the victim "for the purpose of" preventing her from being a witness (Penal Law § 125.27 [1] [a] [v]; *see Cahill*, 2 NY3d at 56-57) and that he came "dangerously near" completion of the crime (*People v Kassebaum*, 95 NY2d 611, 618 [2001], *cert denied* 532 US 1069 [2001]; *see* Penal Law § 110.00) are also unpreserved for review. In any event, we find that the evidence was sufficient, and the verdict was not against the weight of the evidence, as to those elements as well as to the remaining charges on which defendant was convicted (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]).

With respect to defendant's ineffective assistance claims, we find that the trial record, as supplemented by the extensive record on the motion to vacate the judgment of conviction, establishes that defendant received effective assistance of counsel (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]). The actions of counsel challenged by defendant on appeal constituted reasonable strategic decisions. Furthermore, even assuming that counsel should have taken each of the steps set forth by defendant in his present arguments, counsel's failure to do so did not prejudice defendant or deprive him of a fair trial (*see People v Hobot*, 84 NY2d 1021, 1024 [1995]).

The court properly concluded that the results of certain forensic testing were not subject to disclosure under *Brady v Maryland* (373 US 83 [1963]). In any event, there is not even a reasonable possibility, under the totality of the circumstances of the case, that the nondisclosure could have affected the verdict. Similarly, we conclude that the court properly denied defendant's CPL 440.30 (1-a) motion to compel forensic testing of evidence, since there was no reasonable probability that DNA testing could have led to a more favorable verdict (*see People v Pitts*, 4 NY3d 303, 311 [2005]).

Defendant's remaining contentions, including his pro se claims, are unpreserved and we decline to review them in the interest of justice. As an alternative holding, we also reject them on the merits.

Accordingly, the judgment of the Supreme Court, Bronx County (Martin Marcus, J.), rendered July 8, 2002, convicting defendant, after a jury trial, of kidnapping in the first degree, attempted murder in the first degree, attempted assault in the second degree, and criminal possession of a weapon in the second degree, and sentencing him to consecutive prison terms of 25 years to life, 15 years to life and $1\frac{1}{3}$ to 4 years, concurrent with a term of five years, respectively, should be affirmed. The orders of the same court and Justice, entered on or about September 8, 2005 and March 13, 2006, which, respectively, denied defendant's CPL 440.30 (1-a) motion to compel forensic testing and CPL 440.10 (1) motion to vacate the judgment of conviction, should be affirmed.

GONZALEZ, J.P., NARDELLI and CATTERSON, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered July 8, 2002, affirmed. Orders, same court, entered on or about September 8, 2005 and March 13, 2006, affirmed.