■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HECTOR MARTINEZ, Appellant. [925 NYS2d 8]—

Judgment, Supreme Court, New York County (William A. Wetzel, J.), rendered December 5, 1995, convicting defendant, after a jury trial, of murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 22½ years to life, 2⅓ to 7 years and 5 to 15 years, respectively, affirmed.

Eyewitness testimony at a suppression hearing and subsequently at trial adduced the following: On May 3, 1991, defendant Hector Martinez was approached by Lavert Lee on West 151st Street in Manhattan. Lee asked defendant to sell him $8 worth of crack. Defendant insisted that Lee wait for another buyer to come along because he did not want to retrieve such a small amount of drugs from his supply. When Lee persisted, defendant threw his $8 on the ground and a fight broke out. During the fight, defendant left to retrieve a semiautomatic gun from an adjacent building while defendant's associate resumed the fight with Lee. When defendant returned with the pistol, Lee fled into the lobby of a nearby apartment building, located at 528 West 151st Street.

Bystander Anthony Ovando and building resident Rhonda Miles both testified that they were in the process of trying to unlock the interior door leading in from the lobby when Lee ran

into the lobby, bleeding and upset, and asked them to hurry. Moments later, defendant approached the entrance to 528 West 151st Street, stood outside the exterior door of the building, pointed his weapon through a missing windowpane in the door, and fired four rounds into the lobby, and then immediately fled the scene.

Miles escaped unharmed, Ovando suffered a nonlethal gunshot wound to the waist, and Lee died in the hospital as a result of one bullet penetrating his torso. Miles testified that the lobby was well-lit and she could clearly identify defendant's upper body and face. Four spent .25 caliber shells were recovered from the building lobby.

After an initial investigation, detectives were unable to locate defendant for several years. The case was reopened on April 9, 1995, when a former neighborhood resident was arrested for shoplifting. He indicated that he had witnessed a shooting a few years prior on West 151st Street. With his assistance, the detectives located defendant in April 1995.

Defendant was charged with, inter alia, twin counts of both intentional and depraved indifference murder. He was acquitted of intentional murder and convicted of one count of depraved indifference murder.

On appeal, defendant argues that the only reasonable view of the evidence supports a finding that the "execution-style" killing was clearly intentional, and that there is no set of facts that would indicate that the defendant committed the crime with "reckless disregard." He further asserts that, pursuant to the law at the time as enunciated in *People v Gonzalez* (160 AD2d 502 [1990], *lv denied* 76 NY2d 857 [1990]), he objected to the trial court's submission to the jury of the depraved indifference count together with the intentional murder count, and that the refusal of the court to withhold the depraved indifference count from the jury deprived him of his state and federal constitutional rights to a fair trial. Hence, defendant argues that the depraved indifference murder count must be dismissed and his conviction reversed.

As a threshold matter, defendant preserved only his general claim that the trial evidence supported a verdict of intentional murder and not a finding that he committed a crime with "reckless disregard." He did not voice any objection to the court's instructions to the jury on the elements of the crime of depraved indifference murder, and he raises the constitutional aspects of his claim for the first time on appeal. Nor did he assert that depraved indifference is a culpable mental state which is the currently applicable law. Hence, his claim as to the insufficiency

of evidence supporting a finding of depraved indifference murder must be evaluated according to the court's charge as given without objection (*see People v Sala*, 95 NY2d 254, 260 [2000]; *see also People v Johnson*, 67 AD3d 448, 449 [2009], *affd* 14 NY3d 917 [2010]).

This well-established precedent notwithstanding, the dissent contends that defendant need not object to the instructions given to the jury since "[l]ogically, a defendant's objection to the submission of an offense to the jury encompasses any instructions given to the panel to enable it to consider such offense." Of course, the dissent does not cite to any legal authority for this proposition since none exists. However, as recently as three months ago, three judges of the Court of Appeals rejected an indistinguishable preservation argument (*People v Prindle*, 16 NY3d 768, 773 [2011, Pigott, J., dissenting]).*

Consequently, the *Register* standard, which was the basis of the jury charge in this case, informs our sufficiency analysis and conclusion that the verdict was based on legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]).

According to Penal Law § 125.25 (2), a person commits depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." The Penal Law further states that one acts recklessly "when he is aware of and consciously disregards a substantial and unjustifiable risk" (Penal Law § 15.05 [3]).

The jury was instructed in light of then-applicable law pursuant to *People v Register* (60 NY2d 270 [1983]) that the People were required to prove (1) that defendant shot a pistol at the victim thereby creating a grave risk of death to another person; (2) that defendant was aware of this substantial and unjustifiable risk; (3) that defendant consciously disregarded the risk that death would result; (4) that defendant's conscious disregard of this risk constitutes a gross deviation from the standard

---

* The Court split 4 to 3 in this decision as to the sufficiency of evidence under the standard enunciated in *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]), with the majority reducing the conviction. The majority resolved the appeal, without ruling on the preservation argument and conducted the sufficiency analysis, as did the dissenters, in accordance with the principle that any such analysis is informed by the "jury charge given without objection or exception" (*Prindle* at 770). This even though defendant argued that his trial order of dismissal motion "adequately anticipated and preserved his argument that the evidence at trial was legally insufficient under *Feingold*" (*id.* at 771).

of conduct that a reasonable person would observe in the situation; and (5) that the circumstances surrounding defendant's reckless conduct were so brutal, callous, extremely dangerous and inhumane as to demonstrate an attitude of total and utter disregard for the life of endangered persons.

We find that the People met their burden. Defendant is responsible for killing one victim, Lee, as a result of one of the four bullets penetrating his torso, and injuring another with a second bullet after shooting into a confined space occupied by three people. As the People correctly assert, this is a quintessential example of depraved indifference murder. The evidence supports the reasonable view that, either defendant shot into a group of people not aiming at any one individual in particular (see People v Jean-Baptiste, 38 AD3d 418 [2007], lv denied 9 NY3d 877 [2007] [depraved indifference murder conviction upheld when defendant fatally shot victim during brawl involving others]), or that he aimed at one individual in an area where others were present (see People v Johnson, 67 AD3d at 449-450 [depraved indifference murder conviction upheld when defendant shot brother in an area where children were present]; see also People v Summerville, 22 AD3d 692 [2005], lv denied 6 NY3d 759 [2005] [upholding depraved indifference conviction where defendant fired a gun on a public street in the direction of at least two individuals, and in close proximity to several others]).

In this case, the People established that two of defendant's four shots ended up lodged in the wall, and the record indicates that the shots were fired in an erratic and indiscriminate manner which denotes anything but an "execution-style killing." Thus, defendant's reckless conduct of firing rounds into a small vestibule occupied by three people rises to the level of depraved indifference. The fact that one of the bystanders was shot supports the conclusion that defendant was not acting with intent to cause the victim's death but with a total and utter disregard for the life of either of the bystanders trapped in the vestibule with the intended target, Lee.

Indeed, the testimony suggests that when defendant fired he could have easily singled out his alleged victim in the small vestibule area. Evidence at trial established that the exterior door was not locked and was missing its glass windowpane. Defendant could easily have moved in much closer and taken better aim at a body part that would ensure achieving his intention of killing Lee. Lee was unarmed as were the two bystanders, and defendant could have ordered Ovando and Miles to get out of the way. Defendant did not do so.

Moreover, defendant could have chosen not to fire the gun when Lee pulled Ovando in front of him as a shield, or, as reasoned above, he could have moved in closer for a better shot and ordered Ovando to get out of the way. Instead he discharged the gun without any regard as to whom he was shooting. In other words, he appeared indifferent as to whom he might kill.

While it is clear that Lee was the object of his anger and of defendant's pursuit, the jury heard no evidence that defendant intended to kill Lee. The record does not reflect that defendant said anything to that effect or that he declared any intention to kill the victim rather than merely to frighten him off or to make a showing of his control over the situation. Nor did he enter the vestibule after the shooting to make sure that Lee was dead.

Finally, in direct contraindication of an intentional killing, this is not a case where the killing was done in a one-on-one fashion, at point-blank range (*see e.g. People v Payne*, 3 NY3d 266 [2004]), or a case in which the defendant shot the victim once in the chest, approached to within an arm's length and shot the victim in the face, then shot the victim twice in the back and six more times in the head from six inches away (*see People v Gonzalez*, 1 NY3d 464, 465-466 [2004]). This type of deliberate and repetitive action is in stark contrast to defendant's action in this case. Hence, nothing on the record warrants setting aside the jury's conclusion that defendant acted with depraved indifference rather than intentionally.

We have considered the remaining issues raised by the defendant, and find them also to be without merit. The court properly denied defendant's motion to dismiss the indictment, made on the ground of prearrest and preindictment delay (*see People v Decker*, 13 NY3d 12 [2009]; *People v Taranovich*, 37 NY2d 442, 445 [1975]). The delay was satisfactorily explained as the product of investigative difficulties, specifically that the defendant left the jurisdiction after the shootings. Moreover, the defendant did not establish prejudice.

The court also properly exercised its discretion in granting the People's request for a brief delay in disclosing the existence of a newly discovered witness who made a photographic identification of defendant shortly before opening statements (*see* CPL 240.50 [2]; 710.30 [2]). The witness articulated a fear of the defendant and his family which justified a delay so that she could be relocated before her identity was disclosed (*see People v Boyd*, 164 AD2d 800, 802 [1990], *lv denied* 77 NY2d 904 [1991]; *see also People v Frost*, 100 NY2d 129 [2003]). Again, the defendant was not prejudiced by the delay, which amounted to a single day. He received a mid-trial *Wade* hearing, and his

claim that the disclosure delay adversely impacted his trial strategy is unsubstantiated.

None of defendant's remaining contentions warrants reversal. The court properly denied defendant's motion to suppress his statement to the police. There is no basis for disturbing the court's credibility determinations, which are supported by the record (see People v Prochilo, 41 NY2d 759, 761 [1977]). Defendant did not preserve his claim that a detective engaged in the functional equivalent of pre-Miranda interrogation, or any of his challenges to the People's summation, and we decline to review them in the interest of justice. Defendant's ineffective assistance of counsel claim is unreviewable on the present, unexpanded record.

Finally, we perceive no basis for reducing the sentences. Concur—Sweeny, Catterson, McGuire and Román, JJ.

Tom, J.P., dissents in a memorandum as follows: On December 5, 1995, defendant was convicted of the death of Lavert Lee, whom he chased into the vestibule of an apartment building and shot at close range. Applying the analysis espoused in People v Sanchez (98 NY2d 373 [2002]), which adhered to the rationale of People v Register (60 NY2d 270 [1983], cert denied 466 US 953 [1984]), a case that has since been overruled (People v Feingold, 7 NY3d 288, 296 [2006]), the majority concludes that the judgment convicting defendant of second-degree murder is sustainable under the theory that Lee's death was the consequence of depraved indifference. This conclusion presumes that the law developed under Register and Sanchez is the appropriate standard of review. Whether the law as charged to the jury under Register and Sanchez or the law as it currently stands should be applied depends entirely on whether defendant adequately preserved the issue sought to be raised on appeal— that the circumstances of the crime are consistent only with an intentional killing (see Policano v Herbert, 7 NY3d 588, 598 [2006]; People v Payne, 3 NY3d 266, 273 [2004]; People v Gonzalez, 1 NY3d 464, 466 [2004]). The majority's application of the preservation doctrine effectively bars any and all such challenges to a murder conviction predicated on depraved indifference, irrespective of the specificity of the defendant's objection.

After Lavert Lee tendered $8 to defendant for crack cocaine, he was told to wait until another buyer made a purchase because it was not worthwhile for defendant to go to his stash for such a small sale. When Lee became impatient, defendant threw the money on the ground and slapped Lee in the face. As the two men fought, defendant's associate, identified only as Juan, hit Lee over the head with a bottle. While Lee was engaged in fight-

ing Juan, defendant went to a nearby building and returned with a gun. Defendant chased Lee into the vestibule of an apartment building at 528 West 151st Street, where Anthony Ovando was attempting to open the lock to the inner door while another tenant waited. Despite Lee's frantic urging, Ovando was unable to open the door. When defendant pointed his gun through an open window in the outer door, Lee pulled Ovando in front of him as a shield. Defendant fired, and Ovando was grazed in the torso and fell to the floor. Ovando then heard defendant fire several more rounds, one of which struck Lee in the chest. Lee was taken to the hospital, where he died later that morning. Four shell casings from a .25 caliber, semiautomatic pistol were recovered from the vestibule, which was described by witnesses as being well lit.

On the principal count of murder in the second degree, defendant was convicted on a theory of depraved indifference murder and acquitted of intentional murder. The jury also found him guilty of assault in the second degree and criminal possession of a weapon in the second degree. Defendant was sentenced to 22½ years to life on the murder count, 2⅓ to 7 years on the assault count and 5 to 15 years on the weapons count.

Since defendant was convicted, the Court of Appeals has restricted the scope of *Register* and *Sanchez* in a series of decisions limiting the circumstances supporting conviction for depraved indifference murder (*see People v Suarez*, 6 NY3d 202 [2005]; *People v Payne*, 3 NY3d 266 [2004], *supra*; *People v Gonzalez*, 1 NY3d 464 [2004], *supra*; *People v Hafeez*, 100 NY2d 253 [2003]), ultimately overruling *Register* and construing depraved indifference as "an additional requirement of the crime" (*Suarez*, 6 NY3d at 214) comprising its mens rea (*Feingold*, 7 NY3d at 296). Although the Court declined to apply its rulings retroactively (*Policano v Herbert*, 7 NY3d 588, 603-604 [2006], *supra*) and did not identify the date when the *Register/Sanchez* standard ceased to apply to final convictions (*id.* at 603), defendant herein filed a timely notice of appeal, and this Court granted him an enlargement of time to perfect his appeal. Thus, the judgment is nonfinal, and review is not confined to the law in effect on the date of conviction (*cf. People v Baptiste*, 51 AD3d 184 [2008], *lv denied* 10 NY3d 932 [2008]).

The People assert that defendant derives no benefit from the change in the law after his conviction. While conceding that defendant timely objected to the submission of the depraved indifference murder count to the jury, the People argue that his failure to later object to the trial court's charge as to that count requires this Court to review the verdict on the basis of those

instructions given to the jury without exception (*see People v Gray*, 86 NY2d 10, 24 [1995]; *People v Dekle*, 56 NY2d 835, 837 [1982]). Since the trial court charged the jury under the then applicable *Register/Sanchez* standard, the People contend that it provides the proper standard on appeal.

The preservation rule was developed under Court of Appeals jurisprudence as a matter of necessity due to its circumscribed jurisdiction, generally confining the scope of its review to questions of law (*see Gray*, 86 NY2d at 20). To preserve a claim of error in a jury charge or the admission of evidence requires that the defendant bring the claim to the trial court's attention so as to afford the court an opportunity for timely cure (*id.* at 20-21). Under the preservation rule, the particular issue sought to be reviewed must have been specifically raised before the trial court in order to present a question of law amenable to review by the Court of Appeals (*see People v Cona*, 49 NY2d 26, 33 n 2 [1979]). Simply stated, it is the defendant's obligation to "make his or her position known to the court" (*see Gray*, 86 NY2d at 19), a mandate that is not fulfilled by a general motion (*id.* at 20).

At the outset, there is no merit to the People's contention that defendant's objection to the submission of depraved-mind murder to the jury is ineffective because he did not raise any objection to the instructions given to the jury. By statute, "a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered" (CPL 470.05 [2]). In the present case, the basis for defense counsel's challenge to the submission of the depraved indifference count to the jury could not have been clearer, the trial court clearly understood the basis of the legal sufficiency challenge, and it clearly rejected it. Logically, a defendant's objection to the submission of an offense to the jury encompasses any instructions given to the panel to enable it to consider such offense. The operative question is not whether defendant objected to the court's submission of depraved indifference murder, as the People concede he did, but whether defendant sufficiently apprised the trial court of the issue that he now submits to this Court as a basis for reversal.

At the close of evidence, defense counsel noted that "the Court reserved my right to make motions." At that time, the court limited argument to the dismissal of the second-degree assault

count. As counsel stated, "The court has indicated in our off the record discussion after reviewing all the evidence, the court is not going to dismiss any of the other charges."

On the following trial date, prior to summations, the court concluded proceedings relating to its charge. The following colloquy ensued:

"[COUNSEL:] It's a little late. I am going to indicate for the record, although I understand the Court will not omit it, that even the second murder count should be omitted to the jury; that is the reckless disregard. I think the evidence as presented by the People is straightforward. Either the jury will believe that this defendant not only intentionally went and got a gun, but shot and killed Lavert Lee, in so doing also whether intentional or not caused injury to Anthony Ovando.

"Or if he didn't, then they're going to say that none of this is true.

"I don't think there's any set of facts the People have pointed to that would indicate that the defendant committed the crime with reckless disregard. It's been the People's contention throughout that he intended to do this crime, acted to do this crime and then committed the crime.

"THE COURT: All right. Well, I'm going to deny that application. While the issue may be motive, but, the facts in evidence are certainly consistent with a charge of reckless disregard.

"The defendant is accused of taking a gun and firing it in a very confined area where two people were visibly present and therefore, I am going to leave that in."

After the verdict was returned, counsel took advantage of the court's invitation to reserve any motions for sentencing, at which time he took the opportunity "to supplement the motion as to the conviction which was returned." Citing to this Court's decision in *People v Gonzalez* (160 AD2d 502 [1990], *lv denied* 76 NY2d 857 [1990] [victim killed by hail of bullets fired from approximately 10 feet away]), which counsel maintained involved "almost identical" facts, he argued:

"The People clearly established, if all the witnesses were believed and the statement by the defendant was believed, that the defendant intended to shoot and did shoot Lavert Lee. There is an accidental shooting of Anthony Avondo, and clearly that wouldn't apply here.

"But as to Lavert Lee, the facts are clear if believed by the jury and as presented by the People, that the defendant chased Mr. Lee, had a dispute with him just prior thereto, an argument, fought with him. Got a gun for the sole purpose of shoot-

ing him; chased him and shot him. The defendant's own statement shows an intentional act. There was no self-defense justification offered by the defendant at any time. Nor was there any evidence whatsoever of any shooting other than directly at Lavert Lee . . .

"The bottom line, Your Honor, is that the People did, I believe, according to the People's argument, establish the intentional murder, murder two. The jury found that they did not; found him not guilty of that.

"I don't believe that there was any evidence introduced as depraved indifference from which the jury could render a verdict on it."

Counsel asked the court "to find that, in fact, the People have not established depraved indifference." After hearing extensive argument from both sides, the court held that "there is sufficient evidence to support the jury's verdict of guilty of murder by depraved indifference. All motions are denied."

The record establishes that counsel, both at the close of evidence, during the charge conference, and after the return of the verdict, clearly articulated his objection that the evidence supporting the depraved indifference murder count was insufficient because the only reasonable conclusion, in fact the only theory presented by the People, was that defendant retrieved a gun for the purpose of shooting Lee, intentionally pursued and shot the victim, causing his death.

"[T]he preservation requirement compels that the argument be 'specifically directed' at the alleged error" (*Gray*, 86 NY2d at 19 [general objection to sufficiency did not alert court to the lack of evidence proving the defendant had knowledge of the weight of a controlled substance]). As stated in *People v Hines* (97 NY2d 56, 62 [2001]), "[A]n indictment may be dismissed due to insufficient evidence only where the sufficiency issues pursued on appeal were preserved by a motion to dismiss at trial." It is clear that the trial court entertained and decided a defense motion to dismiss the count of depraved indifference murder, explicitly stating that it was "going to deny that application." Contrary to the People's intimation, there is no requirement that a defendant continually register a protest to the court's ruling. Here, as in *People v Rosen* (81 NY2d 237, 245 [1993]), "defendant's specific application and the court's equally specific ruling were sufficient to preserve the issue for appeal."

It is equally clear that the court heard and disposed of a postverdict motion to dismiss the depraved indifference murder count as unsupported by the evidence. On the motion, the defense specifically reminded the court of its position that the

evidence was consistent only with an intentional killing. The court heard argument, considered the question and disposed of the motion. Defendant "thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition" (CPL 470.05 [2]).

The majority equates nonpreservation with the defendant's failure to, additionally, challenge "the charge as given." In support, the majority relies on *People v Sala* (95 NY2d 254 [2000]) and *People v Johnson* (67 AD3d 448 [1st Dept 2009], *affd* 14 NY3d 917 [2010]). In *Sala*, a larceny and fraud case, defendants on appeal challenged the legal sufficiency of certain larceny counts on the basis that a mere omission of material fact does not constitute a false statement to support larceny by false pretenses, but no objection was made to the court's instruction that a false statement may consist of either an affirmative misrepresentation or an omission of material facts. Although the Court of Appeals rejected preservation since defendants had not protested "the . . . charge as given" (95 NY2d at 260 [emphasis omitted]), the decision also reflects that defendants' appellate claim was not asserted in dismissal motions. Hence, *Sala* is distinguishable and does not apply to the present context.

In *Johnson*, defendant's challenge to the verdict, under a weight of the evidence review, was rejected with respect to depraved indifference murder. This Court's analysis noted that defendant conceded having failed to preserve any legal sufficiency challenge with respect to mens rea, since he failed to alert the trial court to his appellate claim in his motion for a trial order of dismissal and, indeed, failed to assert any legal sufficiency challenge therein. It was also noted therein that as a result, review was governed by the charge as given, to which the defendant also failed to object. *Johnson*, too, does not compel the conclusion that present defendant, having emphatically advocated for dismissal of the depraved indifference count on the basis of the People's evidence, and the court's adverse ruling encompassed the claims presently raised on appeal, somehow failed to preserve the claim simply because he did not also engage in the futile exercise of also challenging the manner in which the court articulated the alternative theories of murder for the jury.

Finally, a finding of nonpreservation by a dissent, by definition, would not constrain our analysis, so that the majority's citation, in that regard, to the dissent in *People v Prindle* (16 NY3d 768 [2011]) is inapplicable. Notably, the Appellate Division's memorandum decision in that case did not even address preservation.

The Court of Appeals has decided cases where, as here, the defendant "argued that the evidence was consistent only with an intentional killing, and thus there was no reasonable view of the evidence under which he could have been found guilty of causing [the victim's] death recklessly (the requisite mens rea for depraved indifference murder), rather than intentionally" (*Policano v Herbert*, 7 NY3d at 598). Likewise, the Court has undertaken review were, as here, "defendant moved for a trial order of dismissal, arguing that the evidence was legally insufficient to establish his guilt of depraved indifference, as opposed to intentional, murder" (*People v Gonzalez*, 1 NY3d at 466).

The majority's conclusion on the preservation issue, reached without undertaking even a cursory analysis, dictates its disposition of the sufficiency of the evidence issue. Having decided that defendant's objection to the trial court's submission of depraved indifference murder to the jury fails to preserve objection to any instruction that the court may have given in regard to that offense, the majority has necessarily determined that this matter must be reviewed under the *Register/Sanchez* standard in effect at the time of defendant's conviction (*see e.g. Sala*, 95 NY2d at 260-261). Given the factual similarity to *People v Sanchez* (98 NY2d 373 [2002], *supra*), the majority's conclusion that defendant's shooting of Lee constitutes depraved indifference murder under the *Register/Sanchez* standard is a foregone conclusion (*see e.g. People v Johnson*, 67 AD3d 448 [2009]).

Since I conclude that defendant fully preserved the issue of whether the evidence is sufficient to support conviction of depraved indifference murder, my analysis proceeds to a contrary result under the standard governing depraved indifference murder that has since evolved under *Hafeez, Gonzalez, Payne, Suarez*, and *Feingold. Hafeez* resolved that where the crime "focused on first isolating, and then intentionally injuring, the victim," the heightened risk of death to bystanders required under *Register* was absent (100 NY2d at 259). *Gonzalez* emphasized the inherent mutual exclusivity of the mens rea for intentional and depraved-mind murder, stating that "a person cannot act both intentionally and recklessly with respect to the same result. 'The act is either intended or not intended; it cannot simultaneously be both' " (1 NY3d at 468, quoting *People v Gallagher*, 69 NY2d 525, 529 [1987]). *Payne* established that where there is a manifest intent to kill, the use of a weapon cannot result in depraved indifference murder (3 NY3d at 271), so that "the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide" (*id.* at

272). As in *Payne*, the present case involved a point-blank shooting, notwithstanding the majority's characterization to the contrary. *Suarez* drew a clear distinction between intent and depravity, to "make clear that depraved indifference is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (6 NY3d at 214). Finally, *Feingold* established that depraved indifference is a culpable mental state that "can, like any other mens rea, be proved by circumstantial evidence" (7 NY3d at 296).

Dispositive of this appeal are *Hafeez*, *Payne* and *Suarez*. Like the victim in *Hafeez*, Lee was not a random or inadvertent target, but was pursued by an attacker armed with a deadly weapon, isolated from persons on the street in a confined area and shot in the chest (*cf. People v Johnson*, 10 NY3d 875 [2008] [victim shot on street from 30 feet away]). As in *Gonzalez*, "When defendant shot his victim at close range, he was not recklessly creating a grave risk of death, but was creating a virtual certainty of death born of an intent to kill" (*Gonzalez*, 1 NY3d at 468). "It was a quintessentially intentional attack directed solely at the victim" (*Hafeez*, 100 NY2d at 258). That an unintended victim was grazed by a bullet does not detract from the intentional nature of the attack, and intent is the antithesis of indifference (*Gonzalez*, 1 NY3d at 468). The majority is persuaded by the lack of evidence that defendant did not declare his intention to kill Lee. Leaving aside the observations that murderers may not typically telegraph their murderous intent, in this case evidence of intent is manifest in the record. Defendant's purposeful assault on the victim with a handgun is apparent from his altercation with Lee on the street. His diversion to obtain the weapon from a nearby building, and his pursuit of the victim and the firing of shots at close range are all indicative of intent (*Payne*, 3 NY3d at 271-272), not indifference (*Suarez*, 6 NY3d at 214; *cf. People v Callender*, 304 AD2d 426 [2003], *lv denied* 100 NY2d 641 [2003] [firing into a crowd from a 15th-floor balcony]). The majority's suggestion that defendant's failure to enter the vestibule to ascertain whether he needed to finish the job somehow vitiates the intentionality of the killing, is contrary to human nature; I would counter with the suggestion that the expected impulse would be for the shooter to quickly flee and thereby hope to avoid an identification. The majority also speculates that if defendant intended to shoot Lee, he would have refrained from shooting when Lee pulled Ovando in front of him; since he failed to do so, as that purported theory goes, defendant acted with depraved indiffer-

ence rather than intentionally. However, I cannot see how this follows. For me, the more persuasive fact is that defendant fired four shots at close range in a confined location. After Ovando fell from a gunshot wound, several more shots were fired, striking the intended victim, Lee, once in his chest. As *Gonzalez* found, the multiplicity of shots lends itself much more to a finding of an intentional killing rather than an indifferent killing. Because indifference, which is an essential component of the crime, is negated by intent, there is no reasonable view of the evidence that will support conviction for depraved indifference murder.

Accordingly, the judgment insofar as it convicted defendant of depraved indifference murder should be reversed.