[983 NE2d 751, 959 NYS2d 674]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HECTOR MARTINEZ, Appellant.

Argued October 9, 2012; decided December 18, 2012

APPEARANCES OF COUNSEL

*Stanley E. Neustadter*, New York City, for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Martin J. Foncello* and *Vincent Rivellese* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be modified, by vacating defendant's conviction of depraved indifference murder, dismissing that count of the indictment and remitting to Supreme Court for resentencing and, as so modified, affirmed, with leave to the People, if so advised, to present a charge of manslaughter in the first degree to a new grand jury.

On this direct appeal, defendant argues that the evidence was legally insufficient to establish his guilt of depraved indifference murder. Viewed in the light most favorable to the People, defendant, after an altercation with Lee, obtained a gun, chased him down, and fired four or five shots at him at near point-blank range—acts inconsistent with a conviction for depraved indifference murder.

We have considered defendant's remaining arguments and find them to be without merit.

SMITH, J. (concurring). I join the majority memorandum, and will explain in this opinion my reasons for doing so.

I

Defendant, a drug dealer, became involved in an argument with Lavert Lee, a would-be purchaser of drugs. The argument

escalated into a physical fight, in which defendant and Lee slapped each other, and a friend of defendant hit Lee with a bottle. While the friend and Lee continued to fight, defendant ran into a nearby building and came back with a gun. Lee fled into another building, and defendant followed him. Defendant fired four or five shots, killing Lee with a bullet to the chest and wounding a bystander whom Lee tried to use as a shield.

These events happened in 1991. Defendant was a fugitive until 1995, when he was arrested and brought to trial on an indictment charging him with intentional murder (Penal Law § 125.25 [1]), depraved indifference murder (Penal Law § 125.25 [2]), assault and weapons offenses.

After the close of the evidence, defendant moved to dismiss the depraved indifference murder count, arguing that the evidence showed, if anything, an intentional homicide: "Either the jury will believe that this defendant . . . intentionally went and got a gun, [and] shot and killed Lavert Lee . . . . Or if he didn't, then they're going to say that none of this is true." Defense counsel added: "I don't think there's any set of facts the People have pointed to that would indicate that the defendant committed the crime with reckless disregard. It's been the People's contention throughout that he intended to do this crime." The trial court denied the motion, concluding that "the facts in evidence are certainly consistent with a charge of reckless disregard."

The jury acquitted defendant of intentional murder, but convicted him of depraved indifference murder, assault and criminal possession of a weapon. Defendant filed a timely notice of appeal but, for reasons the record does not illuminate, did not file a brief in the Appellate Division for 14 years—until 2009. The Appellate Division, with one Justice dissenting, affirmed, rejecting defendant's argument that the evidence, while it would support a finding that he killed Lee intentionally, was insufficient to establish depraved indifference murder (*People v Martinez*, 84 AD3d 550 [1st Dept 2011]).

The Appellate Division noted that defendant did not object to the Court's instructions to the jury on the elements of depraved indifference murder, and concluded that his argument "must be evaluated according to the court's charge as given without objection" (*id.* at 553). Because the jury, the Appellate Division said, "was instructed in light of then-applicable law," specifically *People v Register* (60 NY2d 270 [1983]), his argument must be

evaluated under "the *Register* standard" (*id.*). Apparently applying *Register*, the Appellate Division concluded that "nothing on the record warrants setting aside the jury's conclusion that defendant acted with depraved indifference rather than intentionally" (*id.* at 555).

A dissenting Appellate Division Justice concluded "that defendant fully preserved the issue of whether the evidence is sufficient to support conviction of depraved indifference murder" (*id.* at 562). Analyzing the record in light of more recent cases, the dissenter found "no reasonable view of the evidence that will support conviction for depraved indifference murder" (*id.* at 564). The dissenting Justice granted defendant leave to appeal to this Court.

## II

Murder in the second degree is defined in Penal Law § 125.25. Subdivision (1) defines the most common form of the crime, intentional murder, which occurs when a person "[w]ith intent to cause the death of another person, . . . causes the death of such person or a third person" (Penal Law § 125.25 [1]). Subdivision (2) defines depraved indifference murder, committed when a person "[u]nder circumstances evincing a depraved indifference to human life . . . recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). The meaning of the second subdivision has presented a vexing problem for the New York courts.

The history of our depraved indifference murder jurisprudence, beginning with our 1983 decision in *Register*, is described in *Policano v Herbert* (7 NY3d 588 [2006]). As *Policano* explains, *Register* held that the statutory language "under circumstances evincing a depraved indifference to human life" did not identify a culpable mental state, or mens rea. Rather, under *Register* the "depraved indifference" language stated "a definition of the factual setting in which the risk creating conduct must occur" (*Register*, 60 NY2d at 276, quoted in *Policano*, 7 NY3d at 597). Thus we held in *Register* that "recklessness, pure and simple, is the mens rea for depraved indifference murder" (*Policano*, 7 NY3d at 597)—a crime, we said, "distinguishable from manslaughter, not by the mental element involved but by the objective circumstances in which the act occurs" (*Register*, 60 NY2d at 278, quoted in *Policano* at 597).

The jurisprudence developed under *Register*, "epitomized" by our decision in *People v Sanchez* (98 NY2d 373 [2002]), had two

features of special importance in cases involving "fatal one-on-one shootings or knifings" (*Policano*, 7 NY3d at 599). First, "the question of the defendant's state of mind" was thought "to be a classic matter for the jury," so that a defendant could be found to have acted recklessly even where there was "compelling circumstantial evidence of intent to cause death" (*id.*). Secondly, when "a defendant's actions created an almost certain risk of death," that was viewed as sufficient in itself to support a finding of "circumstances evincing a depraved indifference to human life" (*id.* at 600). As we put it in *Sanchez*: "defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25 (2)" (98 NY2d at 378, quoted in *Policano*, 7 NY3d at 598, 600). *Sanchez*, though not decided until 2002, was consistent with many earlier Appellate Division decisions (*e.g. People v Keefer*, 197 AD2d 915, 916 [4th Dept 1993]; *People v Tankleff*, 199 AD2d 550, 554 [2d Dept 1993], *affd* 84 NY2d 992 [1994]; *People v Robinson*, 205 AD2d 836, 836 [3d Dept 1994]; *People v Cole*, 233 AD2d 247, 247-248 [1st Dept 1996]; *People v Crawford*, 295 AD2d 361 [2d Dept 2002]).

Thus, under the *Register* regime, a conviction of depraved indifference murder could be upheld where a defendant had attacked and killed a single victim with a gun or knife, even where the evidence strongly pointed to intentional murder. As a result, it became commonplace in such cases for prosecutors to charge both intentional and depraved indifference murder in one indictment, leaving it to the jury to choose between them. Judge Rosenblatt, dissenting in *Sanchez*, observed that "depraved indifference murder counts have become routine escorts to intentional murder counts" (98 NY2d at 401 [Rosenblatt, J., dissenting]). He appended to his opinion a chart showing that, in 2001 and for several years previously, indictments joining intentional and depraved indifference murder had accounted for roughly half of all murder indictments in New York (*id.* at 416 [Appendix to op of Rosenblatt, J.]).

Our law changed in the four years following the decision in *Sanchez* (*see People v Hafeez*, 100 NY2d 253 [2003]; *People v Gonzalez*, 1 NY3d 464 [2004]; *People v Payne*, 3 NY3d 266 [2004]; *People v Suarez*, 6 NY3d 202 [2005]; *People v Feingold*, 7 NY3d 288 [2006]). We summarized this series of cases in *Policano*:

"Our interpretation of . . . 'under circumstances

> evincing a depraved indifference to human life' . . . gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea, beginning with our decision in *Hafeez* in 2003, continuing in our decisions in *Gonzalez, Payne* and *Suarez* in 2004 and 2005, and ending with our decision in *Feingold* in 2006. . . . As the many concurring decisions and dissents in these cases and the dissent in this case illustrate, individual judges hold differing views as to where along this trajectory a majority of the Court may have effectively passed the point of no return—the limit beyond which, hard as we may have tried, it was simply not possible to reconcile our developing case law with *Register* and *Sanchez*. There is no doubt, however, that a majority of the Court explicitly overruled *Register* and *Sanchez* in *Feingold*, holding that ' "depraved indifference to human life" is a culpable mental state' (7 NY3d at 296)" (7 NY3d at 602-603).

Under our more recent cases, depraved indifference murder convictions may no longer be upheld where the evidence of intent to kill is compelling. We have emphasized that intent to kill and "depraved indifference to human life" are incompatible states of mind, and that the latter is rarely found in homicide cases. We said in *Payne* "that depraved indifference murder may not be properly charged in the overwhelming majority of homicides that are prosecuted in New York" (3 NY3d at 270). We added that, "[w]hile we have identified instances in which a killing could qualify as depraved indifference murder, a point-blank shooting is ordinarily not one of them" (*id.*).

Our abandonment of the *Register-Sanchez* approach to depraved indifference murder raised the important question of how to deal with defendants who, like defendant in this case, were convicted of that crime while *Register* remained the law. We answered this question in *Policano* in 2006, and in *People v Jean-Baptiste* (11 NY3d 539 [2008]). In *Policano*, considering the case of a defendant seeking to attack collaterally a depraved indifference murder conviction that had become final in 2001, we concluded that our "post-*Sanchez* case law" did not apply "retroactively" to such cases (7 NY3d at 603). But in *Jean-Baptiste*, we held that our new "standard as articulated in *Feingold* should apply to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the

proof as to his depraved indifference murder conviction" (11 NY3d at 542).

*Jean-Baptiste*'s qualifying language, "in which the defendant has adequately challenged the sufficiency of the proof," is a critical part of our post-*Sanchez* jurisprudence. The general rule that we will review claims only where they have been properly preserved for review attains special importance in this context. The preservation rule, like our retroactivity holding in *Policano*, serves to prevent the unnecessary overturning of convictions of "[d]efendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute" (*Suarez*, 6 NY3d at 217 [concurring op of G.B. Smith, Rosenblatt and R.S. Smith, JJ.], quoted in *Policano*, 7 NY3d at 604).

Since the present case is, fortuitously, still on direct appeal 17 years after it was tried, whether defendant is entitled to the benefit of the post-*Sanchez* changes in the law depends on whether he adequately preserved at trial the argument he now urges upon us. I conclude that he did.

## III

In moving to dismiss the depraved indifference murder count at trial, defense counsel told the trial judge: "Either the jury will believe that this defendant . . . intentionally . . . shot and killed Lavert Lee . . . . Or if he didn't, then they're going to say that none of this is true." He specifically said that no evidence "would indicate that the defendant committed the crime with reckless disregard" and that the People's contention was that defendant "intended to do this crime." This is essentially the argument defendant now makes—an argument that usually failed in the *Register* era: that a blatantly intentional killing cannot constitute depraved indifference murder. Defendant thus adequately anticipated the post-*Sanchez* developments in the law, which drew a bright line between intent and depraved indifference.

The People argue that defendant's preservation was flawed because he did not articulate at trial the exact holding of *Feingold*, the case that finally overruled *Register*: *Feingold* held that "depraved indifference to human life is a culpable mental state" (7 NY3d at 294). But we have never required that defense counsel anticipate future decisions with such precision. Defense lawyers cannot be expected to be clairvoyant. We have reversed depraved indifference murder convictions in many post-*Sanchez*

cases, where the trials took place before *Feingold* was decided.* In none of these cases did defense counsel explicitly argue at trial that depraved indifference is a "culpable mental state." Had we insisted on the kind of preservation that the People now suggest is necessary, those cases could not have been decided as they were.

Relying on *People v Sala* (95 NY2d 254, 260 [2000]) and *People v Dekle* (56 NY2d 835, 836-837 [1982]), the People also argue, and the Appellate Division held, that defendant is bound by the law as stated in *Register* because he failed to object to the trial court's charge to the jury on the elements of depraved indifference murder. In the view of the Appellate Division majority, defendant's "claim as to the insufficiency of evidence supporting a finding of depraved indifference murder must be evaluated according to the court's charge as given without objection" (84 AD3d at 552-553). I disagree for two reasons.

First, we made clear in *Jean-Baptiste* that a defendant who has "made a specific motion to dismiss . . . anticipating the change in the law brought by *Feingold*" is not also required "to take an exception to the court's depraved indifference murder charge" (11 NY3d at 544). We distinguished *Sala* and *Dekle* on the ground that, in those cases, defendants were advancing on appeal theories different from any they had advanced at trial (*id.*). And secondly, while it is true that *Register* was the law at the time the trial court in this case charged the jury, the court's charge did not incorporate, to any significant degree, the features of *Register* that we later overruled. Specifically, there is no mention in the charge of the *Register* rule that depraved indifference refers to objective circumstances, rather than to defendant's state of mind. Thus it is not apparent what aspect of the charge the Appellate Division thought defendant should have objected to.

## IV

Applying our post-*Sanchez* cases, I have no difficulty in concluding that the evidence is insufficient to support defendant's conviction of depraved indifference murder. We said in *Payne* that a typical "one-on-one shooting . . . can almost never qualify as depraved indifference murder" (3 NY3d at 272); we

---

* In addition to *Hafeez, Gonzalez, Payne, Suarez, Feingold* and *Jean-Baptiste*, see *People v Atkinson* (7 NY3d 765 [2006]); *People v Mancini* (7 NY3d 767 [2006]); *People v Swinton* (7 NY3d 776 [2006]); *People v Taylor* (15 NY3d 518 [2010]); and *People v Prindle* (16 NY3d 768 [2011]).

there made an exception for "the type of circumstances in . . . *Sanchez*" (*id.*), but *Sanchez* has since been overruled. This case is not one of those rare ones, as *People v Roe* (74 NY2d 20 [1989]) perhaps was, in which one person aims and fires a gun at another while remaining indifferent to the result (*see Payne* at 272 n 2).

On the contrary, this case bears a strong resemblance to *Sanchez, Gonzalez, Payne* and *Suarez* in that it might seem to many that the evidence showed defendant to be guilty of intentional murder. But it did not seem so to the jury here or in any of those other cases: in each of them, the defendant was acquitted of intentional murder. The law is now clear that depraved indifference murder cannot serve as a substitute for a rejected intentional murder charge, where there is no evidence to support a finding of depraved indifference. I therefore concur in holding that defendant's conviction of depraved indifference murder cannot stand.

PIGOTT, J. (dissenting). On May 3, 1991, defendant, while standing outside, fired four or five shots into a vestibule occupied by three people. One of those occupants, Lee, had been involved in an altercation with defendant minutes earlier. I suspect that one of the victims of the shooting, Anthony Ovando, would dispute the majority's characterization that the shooting occurred at "near point-blank range" (majority mem at 972), since the testimony adduced by the People at trial established that Lee used Ovando as a human shield, resulting in Ovando taking fire to his waist.

In my view, the proof adduced by the People at trial, viewed in the light most favorable to the People, was sufficient to uphold defendant's conviction for depraved indifference murder (*see People v Suarez*, 6 NY3d 202, 214 [2005] [shooting into a crowd a "(q)uintessential example" of depraved indifference murder]; *People v Jernatowski*, 238 NY 188, 192 [1924] ["when the defendant fired two or more shots into the house where he knew there were human beings he committed an act which the jury certainly could say was imminently dangerous and which evinced a wicked and depraved mind regardless of human life and which amply supplied the evidence of malice and felonious intent"]).

One need only consider the number of shots fired, the number of occupants in the small vestibule and the fact that these occupants were trying to gain access to the apartment building when defendant fired the shots to discern that such facts "were

sufficient to present a question for the jury concerning whether defendant evinced 'a depraved indifference to human life' " (*People v Fenner*, 61 NY2d 971, 973 [1984], citing Penal Law § 125.25 [2]; *see People v Campbell*, 33 AD3d 716, 719 [2d Dept 2006], *lv denied* 8 NY3d 879 [2007] [holding that the defendant who fired five shots at three fleeing men was guilty of depraved indifference murder since "(a) rational jury could reasonably conclude that the defendant did not care whether harm would result when he commenced his shooting spree in the direction of the three fleeing men"]). Given the facts with which the jury was presented, its guilty verdict was hardly irrational and should not be disturbed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur; Judge SMITH concurs in a separate opinion; Judge PIGOTT dissents in an opinion.

Order modified by vacating defendant's conviction of depraved indifference murder, dismissing the count of the indictment charging depraved indifference murder, and remitting to Supreme Court, New York County, for resentencing and, as so modified, affirmed, with leave to the People, if so advised, to present a charge of manslaughter in the first degree to a new grand jury, in a memorandum.